**AURORA SHORES HOMEOWNERS ASSOCIATION, INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver of Broadview Savings Bank, Defendant.**

No. 1:97–CV–778, 5:97–CV–1964.

United States District Court,
N.D. Ohio,
Eastern Division.

April 15, 1998.

Robert L. Tobik, Robert J. Andrews, Jr., Andrews & Associates, Cleveland, OH, Steven M. Ott, Kaman & Ott, Cleveland, OH, Harvey A. Snider, Kener & Snider, Solon, OH, Dale F. Pelsozy, Bertsch, Millican & Winslow, Cleveland, OH, for Plaintiff.

David C. Tryon, Porter, Wright, Morris & Arthur, Cleveland, OH, for Defendant F.D.I.C.

### MEMORANDUM DECISION

GWIN, District Judge.

On February 5, 1998, Defendant Federal Deposit Insurance Corporation (FDIC) filed for summary judgment against Plaintiff Aurora Shores Homeowners Association in the lead case [Doc. 22]. On February 3, 1998, the plaintiff in the consolidated case, Hawthorne of Aurora Limited Partnership (Hawthorne), filed for summary judgment against both the Plaintiff Aurora Homeowners Association and the FDIC [Doc. 12].

These consolidated cases arise from property disputes over Aurora Lake, a body of water in Summit and Portage counties. The FDIC was added as a defendant in its capacity as the successor agency to the Resolution Trust Corporation, which served as receiver to failed savings and loan institutions.

For the reasons outlined below, the Court grants in part and denies in part summary judgment to the FDIC in both cases, dismisses case number 97–CV–778, and denies Hawthorne's motion for summary judgment in case number 97–CV–1964.

I

On April 7, 1994, Hawthorne filed a complaint in Portage County Common Pleas Court against the Plaintiff Aurora Shores Homeowners Association seeking a declaratory judgment over the proper ownership of the land below the waters of Aurora Lake. Hawthorne also sought a declaration as to the exclusive use of the surface of the water covering that land. Three years later, the Plaintiff Aurora Shores Homeowners Association, an Ohio non-profit corporation, filed suit in federal court against the FDIC, as Receiver for Broadview Savings Bank, for breach of contract for failing to convey ownership in Aurora Lake to the homeowners association. Hawthorne and the Plaintiff Aurora Shores Homeowners Association then filed a motion in the state case to join as a new party defendant the FDIC as Receiver of Broadview Savings Bank since the FDIC as receiver might still have some interest in the property.[1] The FDIC then removed the case to federal court and these two cases were consolidated.

Prior to removal, Hawthorne had filed a motion for summary judgment seeking a determination that Hawthorne owned Aurora Lake and was entitled to its exclusive use. The state court never ruled on the motion.

---

1. According to the complaint in case no. 97–CV–778, the Office of Thrift Supervision declared that the Broadview savings and loan entity was insolvent on May 18, 1990. The Resolution Trust Corporation was receiver, until the FDIC succeeded as receiver in January 1996 per federal law.

The FDIC seeks summary judgment claiming that the Plaintiff Aurora Shores Homeowners Association's anticipatory breach claim does not meet all the statutory criteria for suing the receiver of a failed savings and loan, that Plaintiff Aurora Shores Homeowners Association's claim to have property transferred to it at the end of the century has not yet matured, and that, in any event, the Plaintiff Aurora Shores Homeowners Association has not fulfilled its contractual obligations and has sued a non-existent entity.

## II

Aurora Lake is a body of water which is located partially within Summit County, and the majority within Portage County, Ohio.

In September 1970, Philip H. English deeded certain property to a corporation known as P.H.E., Inc., of which he was a shareholder. These properties were located on the Summit County side of Aurora Lake. P.H.E., Inc. became the owner and developer of a subdivision known as Aurora Shores.

During 1971 through 1974, P.H.E., Inc. dedicated certain common areas for the use of the residents of this development. Residents were permitted the use of Aurora Lake. The developer retained title to the lake itself.

P.H.E., Inc. became insolvent and in 1975 transferred all its right, title and interest in any undeveloped areas of the Aurora Lake development to Broadview Savings & Loan Co. Thereafter, Broadview became the developer of this undeveloped section known as the Hawthorne subdivision.

Although the deed refers to a lake lease on behalf of the Plaintiff Aurora Shores Homeowners Association, apparently there never was a written lease at any time in favor of the Plaintiff Aurora Shores Homeowners Association. Eventually Broadview transferred all of its right, title and interest to the property to Hawthorne.

Between 1982 and 1987, Broadview entered into an Agreement of Understanding with the members of the Plaintiff Aurora Shores Homeowners Association regarding the use of the common areas and the use of Aurora Lake. On November 7, 1987, Broadview and the Plaintiff Aurora Shores Homeowners Association entered into an Agreement of Termination terminating many of the provisions of their 1982 agreement.

The Hawthorne subdivision comprises approximately 971 acres on the Portage County portion of the Aurora Lake development. The lake portion of the Hawthorne subdivision comprises approximately 290 acres. The Hawthorne subdivision remained undeveloped when Broadview owned the property.

Broadview entered into a real estate contract for the sale of the Hawthorne development to the Hawthorne of Aurora Limited Partnership. In February 1987, title finally was transferred to Hawthorne of Aurora Limited Partnership of all the right, title and interest to the land previously belonging to Broadview.

Subsequently, Hawthorne could not come to an agreement with the Plaintiff Aurora Shores Homeowners Association regarding the respective parties' rights and duties regarding usage of Aurora Lake.

The Agreement of Termination speaks of conveying to the Plaintiff Aurora Shores Homeowners Association title to the recreational areas in Subdivision No. 4, which encompassed a portion of the subaqueous soil underlying Aurora Lake facing onto the marina building and also the tennis courts, swimming pool, bath house facilities, docking sites, playground and parking facilities. Broadview also transferred title to the Aurora Lake dam and spillway area to Plaintiff Aurora Shores Homeowners Association pursuant to the Agreement of Termination.

The Agreement of Termination also provided for Plaintiff Aurora Shores Homeowners Association releasing Broadview and its successors from liability for certain of the Plaintiff Aurora Shores Homeowners Association's actions or failures to act.

Hawthorne retained the services of a professional surveyor who determined that Constan Development Corp., Hawthorne's predecessor in interest, owned approximately 90 percent of Aurora Lake, while others owned the remaining 10 percent.

## III

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, — U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 255 (6th Cir.1998).

## IV

Defendant FDIC says that agreements to transfer the subaqueous land to the Plaintiff Aurora Shores Homeowners Association are null and void under federal law. The Federal Deposit Insurance Act of 1950, § 13(e), 64 Stat. 889, as amended, 12 U.S.C. § 1823(e), provides:

(1) No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase, or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—

(A) is in writing,

(B) was executed by the depository institution bank and any person or claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,·

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.[2]

*D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and § 1823(e) preclude defenses against the FDIC that are based on unwritten agreements between parties which would otherwise defeat the FDIC's right in bank assets under a purchase and assumption transaction. This allows the FDIC to rely on bank records to assess the worth and collectibility of a bank's assets and to insulate itself from secret agreements or defenses that do not appear on the face of banking instruments. *FDIC v. Tennesseans For Tyree*, 886 F.2d 771, 776 (6th Cir.1989). Normally the rule is applied to prevent such parties from using private agreements as a defense against the FDIC. *Id.*

Caselaw "is well settled that any alleged agreement whatsoever which diminishes the interest of the [FDIC] in an asset which it has acquired from a bank pursuant to § 1823(e) is absolutely invalidated, as against the [FDIC], unless each of the statutory requirements [of 1823(e) ] are met." *FDIC v. Leach*, 525 F.Supp. 1379, 1384 (E.D.Mich. 1981), *aff'd in part and vacated in part on other grounds*, 772 F.2d 1262 (6th Cir.1985). The statute also recognizes that many poorly documented or unwise transactions would not be completed if there had been "mature consideration" and formal action taken by the bank's board of directors or the loan committee. *Langley v. FDIC*, 484 U.S. 86, 92, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987); *Twin*

---

**2.** These provisions may be referred to loosely as "FIRREA" since 1989. In reaction to a series of bank and thrift failures, Congress amended portions of this law through enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. The critical language of § 1823(e) as quoted here preexisted FIRREA.

*Constr., Inc. v. Boca Raton, Inc.,* 925 F.2d 378, 384 (11th Cir.1991) (written document found in bank's records not enough to bring case outside of § 1823(e)).[3] The policies also apply even when the claimant "may not have intended to deceive any person and even if creditors may not have been deceived or specifically injured." *FDIC v. Wright,* 942 F.2d 1089, 1093 (7th Cir.1991), *cert. denied,* 504 U.S. 909, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992) (citations omitted). It covers "both affirmative claims and defenses and extends to arguments asserted in terms of contract or tort." *FDIC v. LeBlanc,* 85 F.3d 815, 821 (1st Cir.1996). In *LeBlanc,* the court held that a counterclaim against the FDIC based on an agreement to provide an access easement for a land-locked parcel of property sold to the counterclaimant by the FDIC's predecessor (the failed bank) was barred because the agreement did not meet all the requirements of 1823(e). *Id.*

Section 1823(e) deals with promises to perform. The FDIC says Aurora Shores Homeowners relies upon just such a promise for Broadview's successor in interest was to transfer title to Aurora Lake by December 31, 2000.

Section 1821(d)(9)(A) clarifies that § 1823(e) applies to affirmative claims against the FDIC by requiring that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver ...." 12 U.S.C. § 1821(d)(9)(A). When a claim is made against the FDIC based on an agreement between the failed institution and the claimant, that claim must meet all four elements set forth in § 1823(e). *North Arkansas Med. Ctr. v. Barrett,* 962 F.2d 780, 786–89 (8th Cir.1992) (claim based upon bank's breach of agreement to pledge securities as collateral is barred by § 1821(d)(9)(A) unless all elements of § 1823(e) are met); *Jackson v. FDIC,* 981 F.2d 730, 735 (5th Cir.1992)

(claim on breach of bank agreement to lend money is barred by § 1821).

■ Broadview's board of directors never approved the Agreement of Understanding, the Termination Agreement, the real estate contract or the deed transferring the property to Constan Development Company. There are no records of such approval, as required by the statute. Without that approval as recorded in the minutes and placed in the official records, any such agreement cannot be enforced against the FDIC. The FDIC has not found any minutes of the board of directors which show approval of the subject agreements or the transfer of the property to Hawthorne.[4] Even if the Plaintiff Aurora Shores Homeowners Association or Hawthorne believed that the transactions were authorized, they may not rely on that belief if the approval was not reflected in Broadview S & L's official records even if "their reliance was in good faith and there was no intent to defraud." *Wright,* 942 F.2d at 1098–99.

Since these agreements do not meet the requirements of § 1823(e), the Plaintiff Aurora Shores Homeowners Association's claim for anticipatory breach in case number 97–CV–778 must be dismissed. Even if the FDIC was not entitled to summary judgment because of the applicability of § 1823(e), which it is, the Court agrees with the defendant that there are other reasons for granting it judgment.

## V

Plaintiff Aurora Shores Homeowners Association is suing the FDIC receiver for anticipatory breach for failing to convey Aurora Lake "not later than December 31, 2000" as specified in the Agreement of Termination.

According to the complaint in the lead case, the Plaintiff Aurora Shores Homeowners Association contracted with the Broadview S & L in March 1982. That

---

**3.** However, the Sixth Circuit does not interpret the scope of section 1823(e) quite a s broadly as does the Eleventh Circuit. *See FDIC v. Aetna Cas. & Sur. Co.,* 947 F.2d 196, 207–08 (6th Cir. 1991).

**4.** There is a letter from a bank officer to Constan Development claiming the board of directors ap-

proved the real estate contract. This is not adequate to meet § 1823(e)'s requirements of actual meeting minutes and their existence as part of the institution's official records. In any event, there is no evidence of actual board minutes for either the Agreement of Understanding or the Termination Agreement.

contract was known as the Agreement of Understanding. Paragraph 2(g) of that contract said Broadview would transfer title to Aurora Lake to the Plaintiff Aurora Shores Homeowners Association on December 31, 2000, if all the terms and conditions of that contract were met. In the fall of 1986, Broadview entered a real estate contract with Constan. Constan bought 257 acres of the 290 acres promised to the Plaintiff Aurora Shores Homeowners Association for $2 million.

After Broadview transferred a portion of Aurora Lake to Hawthorne, Broadview and the Plaintiff Aurora Shores Homeowners Association entered into the Termination Agreement which states at § 5, p. 4: "It is *anticipated that* Hawthorne *will convey fee title* to its portion of the subaqueous soil underlying Aurora Lake to ASHA not later than December 31, 2000." (Emphasis added). The Termination Agreement further states in § 6, p. 5, that

> ASHA ... shall not have any rights, claims, actions, causes or actions or suits under this Section 6 against Savings, its successors or assigns unless and until such rights, claims, actions, causes of actions and suits mature.

■ Obviously, that date has not yet arrived and the cause of action has not yet matured. *C.E. Greathouse & Son v. City of Middletown, Ohio,* No. CA85–05–047, 1986 WL 7391, at *4, 1986 Ohio App. LEXIS 7393, at *11 (Butler Co.App.Ct. June 30, 1986) ("[P]rior to the time all the elements of a cause of action take place, a plaintiff has no grounds for recovery against a given defendant."). *See also Burr v. Bd. of County Comm'rs of Stark County,* 23 Ohio St.3d 69, 76, 491 N.E.2d 1101 (1986); *Hart v. Guardian Trust Co.,* 75 N.E.2d 570, 581–82 (Ohio Com.Pl.Ct.1945)(rule of law that cause of action accrues at moment of wrong by defendant and injury to plaintiff), *rev'd in part on other grounds sub nom. Squire v. Guardian Trust Co.,* 79 Ohio App. 371, 72 N.E.2d 137 (8th Dist.1947). Therefore, the Plaintiff Aurora Shores Homeowners Association's breach of contract claim against the FDIC should be dismissed.[5]

However, when the FDIC administratively disallowed the Plaintiff Aurora Shores Homeowners Association's claim, the agency told the Plaintiff Aurora Shores Homeowners Association in writing that an appeal of the disallowance would be barred unless the Plaintiff Aurora Shores Homeowners Association filed suit within 60 days. The FDIC cannot have it both ways. The agency effectively presented the Plaintiff Aurora Shores Homeowners Association with a "Catch–22," requiring the Plaintiff Aurora Shores Homeowners Association to file suit that would be dismissed as untimely if filed within two months.

## VI

The Plaintiff Aurora Shores Homeowners Association's claim against the FDIC is based on the following paragraph from the Termination Agreement:

> 5. It is acknowledged by the parties that pursuant to the terms of the Agreement of Understanding at Section 2(g) Savings was to transfer fee title to the subaqueous soil of Aurora Lake to ASHA, subject to existing easements, on December 31, 2000, if all terms and conditions of the Agreement of Understanding had been complied with as set forth therein. *It is anticipated that Hawthorn will convey fee title* to its portion of the subaqueous soil underlying Aurora Lake to ASHA not later than December 31, 2000.

Termination Agreement, at ¶ 5 (emphasis added).

■ Assuming this language constitutes an obligation to transfer Aurora Lake, it appears that the Plaintiff Aurora Shores Homeowners Association violated the terms and conditions of the Agreement of Understanding, freeing the FDIC of any obligations which it might otherwise have had to transfer Aurora Lake in the year 2001. The FDIC says that the transfer was contingent on the Plaintiff Aurora Shores Homeowners Association (a) paying real estate taxes on Aurora Lake from January 1, 1981, (b) reimbursing past due taxes to Broadview, and (c)

---

**5.** The FDIC still maintains an interest in this case        as a claimed owner in Aurora Lake.

paying $15 per month to Broadview for the Aurora Lake lease.

The record shows Plaintiff Aurora Shores Homeowners Association failed to fulfill items (a), (b), and (c). Since the execution of the agreement, the Plaintiff Aurora Shores Homeowners Association should have been paying the $15 monthly fees to Broadview or to the FDIC as its successor in interest. The FDIC has not received any such payments. Presumably, the FDIC is released from any obligation it might otherwise have had to transfer the remainder of Aurora Lake to the Plaintiff Aurora Shores Homeowners Association.

In its reply the Plaintiff Aurora Shores Homeowners Association does not contest that it failed to fulfill these conditions and has not explained why it should not be held to these contractual obligations.

### VII

■ Defendant FDIC requests that the Plaintiff Aurora Shores Homeowners Association's complaint in the lead case be dismissed because the Plaintiff Aurora Shores Homeowners Association has not used the proper name of the financial entity for which the FDIC was acting as receiver. A complaint filed against a non-existent entity is a nullity and must be dismissed because any judgment rendered against such an entity must be void. *Patterson v. V & M Auto Body,* 63 Ohio St.3d 573, 576, 589 N.E.2d 1306 (1992).

In the consolidated case, the FDIC was added as a new party defendant without any further identification in the case caption, such as in the lead case where the caption reads "Federal Deposit Insurance Corporation, Receiver of Broadview Savings Bank." The Court notices that the FDIC appeared to concede the point in paragraphs 4 and 18 of its answer and amended answer in the lead case while reserving the objection in paragraph 29.[6] However, in the companion case, the parties' joint motion to add the FDIC to that suit nowhere identifies the FDIC as the receiver of a non-existent entity, except for its attachment of the complaint in the lead case.

6.  *See* Docs. 7 and 10 in case no. 97–CV–778.

The Court will not dismiss these cases on this technicality alone. If any pleading problem exists, it is in the lead case, which the Court is dismissing for the reasons previously outlined.

### VIII

Hawthorne seeks summary judgment in case number 97–CV–1964 citing the statute of frauds against the Plaintiff Aurora Shores Homeowners Association and asserting that Aurora Lake is a non-navigable private body of water. That status would entitle Hawthorne to exclusive use of the 90 percent of the lake over the subaqueous lands it owns. In a subsequent reply brief, however, it appears Hawthorne is not claiming exclusive usage.

The Plaintiff Aurora Shores Homeowners Association responds to Hawthorne's motion by raising the equitable doctrine of part performance to avoid the statute of frauds, and claims that adverse possession establishes its rights to all of Aurora Lake or, alternatively, that it has an easement by prescription with full title remaining with the FDIC. Plaintiff Aurora Shores Homeowners Association also claims that navigability is inappropriate for summary judgment. Plaintiff Aurora Shores Homeowners Association's brief takes issue with Vieland's description of the difficulty of boating on Aurora Lake and cites Ohio caselaw on recreational use as another rationale for navigability. *See Mentor Harbor Yachting Club v. Mentor Lagoons,* 170 Ohio St. 193, 163 N.E.2d 373 (1959); *Coleman v. Schaeffer,* 163 Ohio St. 202, 126 N.E.2d 444 (1955).

The FDIC argued previously that the deed transferring the land from the savings and loan to Hawthorne was invalid under principles of contract law and should be voided, but has waived that argument in a supplemental brief and no longer asserts that the FDIC holds title to Aurora Lake. The FDIC says that if the Court should find that the FDIC is not the owner of the lake, then it should rule that both the Plaintiff Aurora Shores Homeowners Association and Hawthorne share non-exclusive use of Aurora Lake.

■ Without setting forth the caselaw on these various doctrines, and the Court's view of the present state of the evidence on the eve of trial, let it suffice that the Court's review of the record discloses that there are genuine issues of material fact concerning the status of the lake and ownership claims. The Court must deny, at this stage, Hawthorne's motion for summary judgment. Whether Aurora Lake is navigable or non-navigable, public or private, and whether the Plaintiff Aurora Homeowners Association can satisfy the elements of part performance (to avoid the statute of frauds), or adverse possession, or an easement by prescription with title remaining with the FDIC, must be determined at trial.

## IX

The Court grants in part the FDIC's motion for summary judgment. In the lead case, the Court finds that the FDIC is entitled to judgment because of the application of § 1823(e). Further, the Plaintiff Aurora Shores Homeowners Association's claim of anticipatory breach has not matured and, if it had, the Court finds it cannot make a showing that it fulfilled its contractual obligations, such as paying monthly fees, etc., as conditions precedent to a transfer of title. Therefore, the Court will order case number 97–CV–778 dismissed.

In case number 97–CV–1964, the Court denies Hawthorne's motion for summary judgment and orders trial to proceed on any remaining issues, such as the navigability of Aurora Lake and the Defendant Aurora Shores Homeowners Association's claims of adverse possession or an easement by prescription, that were not foreclosed by the FDIC's successful motion for summary judgment on its defenses in both cases.

IT IS SO ORDERED.