USCA1 Opinion

 

 United States Court of Appeals For the First Circuit
No. 98-1029 BEAL BANK, SSB, A TEXAS CORPORATION, Plaintiff, Appellee, v. FELIX J. PITTORINO, ETC., ET AL., Defendants, Appellees. ____________________ RALPH P. AMELIA, ANNA L. AMELIA, LORYANN K. AMELIA, Defendants, Appellants. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] Before Selya, Stahl and Lipez, Circuit Judges. Robert O. Berger and John Lamb for appellants. David D. Pavek, with whom David Pavek & Associates, William V.
Sopp, and Finnegan, Hickey, Dinsmoor & Johnson, P.C., were on brief
for appellee.
May 24, 1999 STAHL, Circuit Judge. Defendant-appellant Ralph P.
Amelia appeals the district court's entry of judgment against him
in this fraudulent conveyance action. After considering Amelia's
arguments, we affirm. I. This case finds its genesis in a number of loans issued
by Vanguard Savings Bank to Felix J. Pittorino from 1989 to 1991. Several of the loans were guarantied by property of Pigeon Hill
Estates Trust ("Pigeon Hill Trust"), for which Pittorino and Amelia
were trustees. Vanguard went into receivership in March 1992, and
the Federal Deposit Insurance Corporation ("FDIC") was appointed
liquidating agent. Then, in November 1995, the FDIC assigned its
Vanguard loans to plaintiff-appellee Beal Bank. On March 22, 1996,
Beal Bank sued Pittorino individually, Pittorino and Amelia as
trustees of Pigeon Hill Trust, and other related entities to
collect on the unpaid loans. The 1996 action was bifurcated: the claims against
Pittorino individually were severed from the claims against
Pittorino and Amelia as trustees. The former were tried before a
jury. On April 8, 1996, the jury returned a verdict against
Pittorino in the amount of $7.8 million. The trial against
Pittorino and Amelia as trustees was scheduled to begin on
September 17, 1996. Prior to that date, the trustees entered
settlement negotiations with Beal Bank and reported to the district
court that they had agreed to a settlement. The court memorialized
the parties' settlement agreement by entering a January 7, 1997
judgment directing Pigeon Hill Trust to pay Beal Bank $3 million. After entry of the final order, Beal Bank initiated Fed.
R. Civ. P. 69 discovery upon judgment defendants Pittorino and the
trustees of Pigeon Hill Trust. Through discovery, Beal Bank
learned that Pittorino and Amelia had transferred the bulk of
Pigeon Hill Trusts's assets to Pitt Construction Corporation
("Pitt") and ALA Realty Trust ("ALA"). Pittorino was the
president, treasurer, and controlling shareholder of Pitt. Amelia
was the sole trustee of ALA, and his wife was the sole beneficiary. These transfers occurred on May 10, 1996, after the jury verdict
had been rendered against Pittorino and while the claims against
Pittorino and Amelia as trustees were still pending. Alleging that the May 10 conveyances were fraudulent and
therefore voidable under Massachusetts law, on April 28, 1997, Beal
Bank filed the instant action against Pigeon Hill Trust, Pittorino,
and Amelia. On June 6, 1997, Beal Bank moved for summary judgment. After a hearing, the court granted summary judgment with respect to
Amelia's defense of estoppel, ordered a jury trial with respect to
Amelia's defense of mutual mistake, and ordered a bench trial with
respect to the remainder of the fraudulent conveyance claim. The
jury rejected Amelia's mutual mistake defense, and, after the bench
trial, the district court ordered the conveyances set aside as
fraudulent. On appeal, Amelia essentially contends that the district
court (1) erred in awarding Beal Bank summary judgment on its
estoppel defense; (2) made a number of errors in its application of
Massachusetts's fraudulent conveyance statute; and (3) delivered an
erroneous jury instruction. We consider each argument in turn. II. A Amelia alleges that the district court, during a hearing
on Beal Bank's summary judgment motion, improperly "str[uck]
various standard contract defenses." Yet, the only defense
discussed in Amelia's brief is the defense of estoppel. Therefore,
we consider only whether the district court erred in striking this
defense. All other arguments have been waived. See King v. Town
of Hanover, 116 F.3d 965, 970 (1st Cir. 1997) (stating that
undeveloped arguments are waived). A district court may dispose of a particular claim or
defense by summary judgment when one of the parties is entitled to
judgment as a matter of law on that claim or defense. See, e.g.,
FDIC v. LeBlanc, 85 F.3d 815, 820-21 (1st Cir. 1996). We review
the district court's ruling de novo, see Terry v. Bayer Corp., 145
F.3d 28, 34 (1st Cir. 1998), drawing all inferences in the light
most favorable to Amelia, see LeBlanc, 85 F.3d at 817. The basis for Amelia's argument that Beal Bank should be
estopped from enforcing the guaranty on the Pittorino loans seems
to be that: (1) the FDIC (Beal Bank's predecessor in interest) had
stated that it would not enforce the guaranty against Pigeon Hill
Trust; (2) based on this statement, Amelia expended legal fees
litigating an earlier state court action against Pittorino to
obtain an equity interest in the Pigeon Hill Trust property; and
(3) Amelia therefore suffered a detriment as a result of the FDIC's
representations. Cf. Clickner v. City of Lowell, 422 Mass. 539,
544 (1996) (setting forth the elements of the estoppel defense). Because the FDIC's alleged statement was not committed to
writing, it cannot form the basis for an estoppel defense. See
D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942); 12 U.S.C. 1823(e). The D'Oench, Duhme doctrine prevents a party from
asserting an oral agreement as the basis for either a claim or
defense against the FDIC, see LeBlanc, 85 F.3d at 821, or against
any of its assignees, see NCNB Texas Nat. Bank v. Johnson, 11 F.3d
1260, 1268 (5th Cir. 1994); Community Bank of the Ozarks v. FDIC,
984 F.2d 254, 257 (8th Cir. 1993); UMLIC-Nine Corp. v. Lipan
Springs Dev. Corp., 168 F.3d 1173, 1179 (10th Cir. 1999). Similarly, section 1823(e) "bars anyone from asserting against the
FDIC any 'agreement' that is not in writing and is not properly
recorded in the records of the bank." LeBlanc, 85 F.3d at 821. During the hearing, the court asked counsel whether
Amelia had any document memorializing the alleged agreement by the
FDIC. Amelia introduced an affidavit that had been executed by an
attorney for the FDIC, which stated that there existed an internal
memorandum from the FDIC legal department to the credit file
indicating that the legal department had determined the guaranty to
be void because of a mutual mistake. Neither the affidavit nor the
memorandum, however, constitutes an agreement that the FDIC would
not enforce the guaranty against Pigeon Hill Trust. Nor do they
satisfy the other requirements of section 1823(e). See 12 U.S.C. 1823(e). The district court thus correctly entered summary
judgment on Amelia's estoppel defense. B Amelia also contends that the court, during the bench
trial, made two errors in its application of the Massachusetts
fraudulent conveyance statute. Amelia's first argument, that the
court erred by applying the Uniform Fraudulent Conveyance Act
("UFCA"), see Mass. Gen. Laws ch. 109A (West 1990) (repealed),
rather than the Uniform Fraudulent Transfer Act ("UFTA"), see Mass.
Gen. Laws ch. 109A (effective Oct. 8, 1996), has no merit. The
transfers occurred on May 10, 1996. The case therefore is governed
by the UFCA, which was in effect at that time. See First Federal
Savings & Loan Ass'n of Galion, OH v. Napoleon, 428 Mass. 371, 373
(1998) (holding that the UFTA does not apply retroactively to
transfers that occurred before its effective date). Amelia's second argument, that the district court erred
in finding that the May 10 conveyances were made with an actual
intent to defraud Beal Bank, also fails. A finding of fraudulent
intent is a finding of fact, which we will not disturb absent clear
error. See Max Sugarman Funeral Home, Inc. v. ADB Investors, 926
F.2d 1248, 1255 (1st Cir. 1991). We find no clear error here. Under the UFCA, a "conveyance made . . . with actual
intent . . . to hinder, delay or defraud either present or future
creditors, is fraudulent." Mass. Gen. Laws ch. 109A, 7. It is
the rare case in which a transferor admits that he intended to make
an impermissible transfer. Thus, courts often infer fraudulent
intent by considering certain "badges of fraud," the most common of
which are (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and (5) retention by the debtor of the property involved in the putative transfer.
Palmer v. Murphy, 42 Mass. App. Ct. 334, 345-46 (1997) (citing FDIC
v. Anchor Properties, 13 F.3d 27, 32 (1st Cir. 1994) (interpreting
the UFCA)). "The presence of a single badge of fraud may spur mere
suspicion, the confluence of several can constitute conclusive
evidence of an actual intent to defraud." Max Sugarman Funeral
Home, Inc., 926 F.2d at 1254-55; accord Anchor Properties, 13 F.3d
at 32. The May 10 conveyances show each of these common badges
of fraud. They occurred after a jury had rendered a $7.8 million
verdict against Pittorino and while the claims against Amelia and
Pittorino as trustees were still pending. Thus, the trustees faced actual litigation in which their co-defendant had already been held
liable. Next, it is undisputed that Pittorino and Amelia
transferred almost all of the trust property. The conveyances
therefore constituted a "transfer of all or substantially all of
[debtor Pigeon Hill Trust's] property." Third, the transfers left
Pigeon Hill Trust with little-to-no assets, yet potentially liable
for the outstanding guaranty on the unpaid Pittorino loans. This
constitutes de facto "insolvency or other unmanageable
indebtedness." Fourth, it is undisputed that there was a special
relationship between the transferors and the transferees: Pittorino
is the controlling shareholder of Pitt, while Amelia and his wife
are respectively the sole trustee and beneficiary of ALA. For that
same reason, the trustees retained control over the property
involved in the putative transfer, thereby constituting a fifth
badge of fraud. The district court's finding of fraudulent intent
is affirmed. C Finally, Amelia assigns error to a jury instruction given
at the conclusion of the trial on his mutual mistake defense. That
instruction related to one John Driscoll, whom Michael Oleksak, the
loan officer for Vanguard, testified had been counsel to Vanguard
and had drafted the guaranty in question. The court instructed the
jury: But also there's Mr. Driscoll. If you believe the testimony, Mr. Driscoll was also an agent of the bank. Mr. Driscoll was the lawyer on behalf of the bank. Were the papers, if you believe the testimony about the drafting of the papers, were these papers drafted the way the bank wanted them drafted? Or, has Mr. Amelia proved that in fact there was a mistake on the part of the bank and that mistake was mutual, was the same as the mistake Mr. Amelia made when he signed the papers.
Citing Devaux v. American Home Assurance Co., 387 Mass. 814 (1983)
and a treatise on legal malpractice, Amelia contends that the
court's instruction "reflects a misunderstanding of basic agency
law," because "[a] lawyer cannot be an agent of his client unless
there is express authorization for such conduct." Then, swiftly
changing course and without citing to any relevant authority,
Amelia argues that the jury instruction somehow amounts to an
erroneous judgment as a matter of law: "the role of the attorney
was defined for [the jury] . . . [when] the jury and not the judge
is to decide such a matter." Neither of these arguments were preserved for appeal
because Amelia did not properly note his objection in the court
below. Federal Rule of Civil Procedure 51 states, in relevant
part, that "[n]o party may assign as error the giving or the
failure to give an instruction unless that party objects thereto
before the jury retires to consider its verdict." Although counsel
for Amelia argued during the charge conference that there was no
evidence that attorney Driscoll was an agent for the bank an
argument different from the two arguably being made on appeal this objection was insufficient to preserve the issue because
counsel failed to renew the objection after the district court
delivered the jury charge. "[I]t is an ironclad rule in this
circuit that failure to renew objections after the charge
constitutes waiver of any claim of error." Wilson v. Maritime
Overseas Corp., 150 F.3d 1, 6 (1st Cir. 1998). We therefore
review for plain error only. See Play Time, Inc. v. LDDS
Metromedia Communications, Inc., 123 F.3d 23, 29 (1st Cir. 1997). Finding no plain error, we affirm. See id. (stating that reversal
under plain error standard requires a showing that the alleged
error "caused a miscarriage of justice or . . . undermined the
integrity of the judicial process"). D Peppered throughout Amelia's briefs are vague and cryptic
references to other alleged deficiencies in the lower court
proceedings. As we noted during oral argument, these theories are
poorly presented and exceedingly confused. It is well-established
that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.
United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (internal
quotation marks and citations omitted). We have done our best to
glean from the unusually opaque appellant's briefs those legal
arguments that have been even marginally developed. We have
considered only those arguments. The rest of Amelia's arguments
are waived. III. The decision of the district court is affirmed. Costs to
appellees.