428 Mass. 371 (1998)                                    371

First Federal Savings & Loan Association of Galion, Ohio *v*. Napoleon.

First Federal Savings & Loan Association of Galion, Ohio *vs*. Gilbert Napoleon & another.[1]

Middlesex. October 8, 1998. - November 10, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Fraudulent Conveyance. Statute,* Retroactive application, Construction. *Bankruptcy,* Fraudulent conveyance. *Evidence,* Presumptions and burden of proof. *Words,* "Insolvency."

An entire mortgage debt, and not just the individual monthly payments as they come due, counts as a debt for purposes of the Uniform Fraudulent Conveyance Act, G. L. c. 109A, § 2 (UFCA) (now repealed); consequently, a conveyance for less than a fair consideration, by a debtor who was insolvent within the meaning of that section, should have been set aside under § 4 of the UFCA. [374-380]

In an action brought under § 4 of the Uniform Fraudulent Conveyance Act, G. L. c. 109A (now repealed), the facts as stipulated demonstrated clearly that the debtor was insolvent within the meaning of the statute. [380]

Discussion of the burden of proof of insolvency of a debtor whose conveyances are sought to be set aside as having been made without adequate consideration. [380-381]

CIVIL ACTION commenced in the Superior Court Department on January 5, 1996.

The case was heard by *Hiller B. Zobel,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Francis T. Talty (Michael Talty* with him) for the plaintiff.

*Richard S. Milesky* for the defendants.

FRIED, J. A mortgage debt counts as a debt for purposes of the Uniform Fraudulent Conveyance Act (UFCA), G. L. c. 109A, § 2 (now repealed), and a conveyance by the debtor for less than a fair consideration should have been set aside under § 4 of the UFCA, even if the debtor may have been currently making payments required under the terms of an outstanding mortgage and even though the debtor was unable to continue to make such payments as they became due.

[1]Arlene Napoleon, trustee of "The Kids Trust."

I

Debtor Gilbert Napoleon and his wife Arlene acquired a house and land as their principal residence (residence) in 1971. In 1982, with the assistance of a bank loan and mortgage, Napoleon purchased two condominiums for investment purposes. The condominium loan and mortgage were sold to the plaintiff, First Federal Savings & Loan Association of Galion, Ohio (bank). In April, 1991, Napoleon transferred his interest in the residence to a revocable trust, called "The Kids Trust" (trust). Napoleon made no further payments on the condominium loan to the bank after July, 1991. The bank foreclosed the mortgage on the condominium units in March of 1992, and in September of 1995, a deficiency judgment was entered in the amount of $123,663.01. The bank brought this action under § 4 of the UFCA to set aside the conveyance to the trust of Napoleon's interest in the residence. There was extensive discovery. At trial it was conceded that the conveyance of the residence, which has an equity of over $100,000, was made, in the words of the statute, "without a fair consideration," in this case for no consideration at all. It was further stipulated that the transfer of the residence "left Napoleon's total assets at $146,800 with liabilities of $235,000."

The judge ruled, however, that the bank had not proved that the requirements of § 4 had been met. That section provides:

> "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

The definition of insolvency, contained in § 2 of the UFCA, provides that:

> "a person is insolvent within the meaning of this chapter when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and mature."

The judge concluded that the bank had the burden of proving Napoleon's insolvency and that that burden could only be met

428 Mass. 371 (1998)                                     373

First Federal Savings & Loan Association of Galion, Ohio *v.* Napoleon.

by showing that "Napoleon was unable to meet his obligations as they came due." Indeed the bank, believing that no further showing was necessary, had rested on the stipulation as to Napoleon's assets and liabilities as sufficient to meet the definition of insolvency under the UFCA. The judge issued summary judgment, dismissing the bank's complaint. We granted the bank's application for direct appellate review and now reverse.

## II

We begin by noting that the UFCA had been repealed, at the time of the hearing in the Superior Court in August, 1997, and replaced by the Uniform Fraudulent Transfer Act (UFTA). St. 1996, c. 157 (effective Oct. 8, 1996). The UFTA carries the same chapter number as the UFCA. It is clear that the UFCA governs this case, as it was in force at the time of the conveyance in issue and we would not apply the new act retroactively.[2] The rule regarding the retroactive application of statutes in Massachusetts is well settled:

> "The general rule of interpretation is that all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of law and the effect upon existing rights, remedies and obligations. . . . It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action."

*Child Support Enforcement Div. of Alaska* v. *Brenckle*, 424 Mass. 214, 219 (1997), quoting *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). Though no Massachusetts

[2]Both parties failed to call our attention to the repeal or advert to it in any way in their briefs. The transcript of the hearing below indicates that they were aware of the repeal. Although the Uniform Fraudulent Conveyance Act (UFCA) governed this transaction, the repeal and substitution were highly relevant to the bank's application for direct appellate review, which is ordinarily available for novel issues of general importance. An issue under a statute since repealed and thus unlikely to arise often or ever again in the future hardly qualifies under that standard. It was counsel's duty to inform us of this when applying for direct appellate review.

court has addressed the question of the retroactivity of the UFTA, a United States Bankruptcy Court for the District of Massachusetts has held that, under Massachusetts law, the UFTA should not be applied retroactively. *In re Granderson*, 214 B.R. 671, 675 (Bankr. D. Mass. 1997). The court there found the UFTA, even including the statute of limitations provision, to be substantive rather than merely remedial. The court found no evidence of a legislative intention that the UFTA apply retroactively. *Id.* The United States Court of Appeals for the First Circuit has implicitly come to the same conclusion. *In re Rauh*, 119 F.3d 46, 48 n.2 (1st Cir. 1997) (applying the UFCA rather than the UFTA where all relevant events, including trial, occurred before effective date of UFTA explaining simply "[t]he Uniform Fraudulent Transfer Act ['UFTA'] did not take effect in Massachusetts until well after these transactions").[3]

## A

The judge ruled that because the bank had offered no evidence that Napoleon was unable to make the regular payments required

[3]Other jurisdictions considering whether the Uniform Fraudulent Transfer Act (UFTA) should be applied retroactively have nearly unanimously answered the question in the negative. See, e.g., *In re Bargfrede*, 117 F.3d 1078, 1080 n.2 (8th Cir. 1997) ("Iowa's Uniform Fraudulent Transfer Act does not apply to this matter, as the Act, which was effective January 1, 1995, is not retroactive"); *In re Bushey*, 210 B.R. 95, 98 n.1 (Bankr. 6th Cir. 1997) (Ohio UFTA not to be applied retroactively); *In re Carmean*, 153 B.R. 985 (Bankr. S.D. Ohio 1993) (same); *In re S. Rachles, Inc.*, 131 B.R. 782, 787 (Bankr. D. N.J. 1991) (UFTA not retroactive under New Jersey law because it "was not enacted merely for curative or ameliorative purposes but 'overhauled the UFCA in numerous substantive aspects' "), quoting *In re Fleet*, 122 B.R. 910, 915 (Bankr. E.D. Pa. 1990). See also *BMG Music v. Martinez*, 74 F.3d 87, 89 (5th Cir. 1996) (amendments to Texas UFTA not retroactive). In those jurisdictions where the UFTA has been found to be retroactive, the holding has been limited, see *In re Carroll Indus., Inc.*, 153 B.R. 100, 102 (Bankr. D. N.H. 1993) (retroactively applying UFTA statute of limitations) or subsequently disapproved. Compare *Cannon v. Whitman Corp.*, 212 Ill. App. 3d 79, 84 (1991) (holding injunctive relief offered by UFTA was remedial in nature and that justice would be served by applying UFTA retroactively), with *In re Martin*, 142 B.R. 260, 264 (Bankr. D. Ill. 1992) (holding that UFTA should not be applied remedially and that "it is by no means clear that the Illinois Supreme Court will adopt the view expressed in *Cannon*"). Compare *In re Gherman*, 103 B.R. 326, 331 (Bankr. S.D. Fla. 1989) (uniform act remedial and should be applied retroactively), with *In re Smith*, 110 B.R. 597, 598 (Bankr. M.D. Fla. 1990) (UFTA should not be applied retroactively and to do so may even violate constitutional principles), and *In re Warner*, 83 B.R. 807, 810 (Bankr. M.D. Fla. 1988) (UFTA not to be applied retroactively).

to service his mortgage debt, it had not been shown that he was insolvent at the time of the conveyance, nor that the conveyance rendered him so. Thus the judge's ruling required that a transferor be shown to be insolvent "in the equitable sense." See *In re Vadnais Lumber Supply, Inc.*, 100 B.R. 127, 137 (Bankr. D. Mass. 1989) ("The concept of equitable insolvency, inability to pay debts as they mature, is well known"), citing Revised Model Business Corp. Act § 6.40 (1984). The bank, by contrast, takes the position that insolvency is established for purposes of § 4 of the UFCA if the conveyer's balance sheet is in, or is put by the conveyance into, a negative position. The stipulation of the parties clearly shows that without the full equity value of the property conveyed in April counting as an asset, Napoleon's balance sheet showed a significant excess of liabilities over assets.

The definition of insolvency in the UFCA speaks of "probable liability on [the conveyor's] existing debts as they become absolute and matured." The judge fastened on the word "probable" to support his interpretation: "The statute requires proving not merely that the existing debts exceeded the assets, but that the excess came from *probable liability* on those debts . . . ., i.e., payment that is immediately due, like this forthcoming month's mortgage payment, rather than the entire unpaid balance of the note" (emphasis in the original). The judge cites for his conclusion *In re Goldstein*, 194 B.R. 1 (Bankr. D. Mass. 1996). But that case will not bear the weight which he put upon it. The debtor in *In re Goldstein* had made a $200,000 conveyance for no consideration. At the time of the conveyance he had assets of over $3 million, "contingent liabilities" of over $10 million and other liabilities of $862,000. The bankruptcy judge ruled that the plaintiff had not met his burden of proving the debtor's insolvency.

> "To establish insolvency, [the plaintiff] must do more than establish that debts exceeded assets. The statute requires proof that assets were exceeded not by existing debts but by 'probable liability' on existing debts. G. L. c. 109A, § 2. Contingent liability is not per se probable. To establish that a contingent liability was probable, the [plaintiff] must show that its contingency was likely to occur, such that the liability was likely to become fixed. He has offered no evidence of probability. Therefore, the

contingent liabilities cannot at this juncture be counted as probable, the Trustee has failed to establish insolvency, and his motion for summary judgment must be denied."

*Goldstein, supra* at 2. The judge below drew the conclusion that an undoubted debt, like a mortgatge debt, not yet due and owing, is the kind of "contingent liability" discussed in *Goldstein.* The debtor urges examples of persons who have guaranteed loans, or who are under contractual obligations, as illustrating contingent liabilities which should not be counted against the assets of a debtor. See *Matter of Xonics Photochemical, Inc.,* 841 F.2d 198, 199-200 (7th Cir. 1988); *In re Consol. Capital Equities Corp.,* 175 B.R. 629, 632 (Bankr. N.D. Tex. 1994). And perhaps they should not be, but they are contingent upon the happening of uncertain circumstances. Similarly, the example of monthly rent obligations under a lease cannot simply be added up and counted as a liability, at least not if the leasehold is not counted as a corresponding asset. But in the case of a fixed obligation like a mortgage or an instalment loan, even though payments are due periodically and the loan cannot be called in except on default of those payments, to call the outstanding principal amount of the debt contingent begs the very question before us. The principal amount of the mortgage debt is not contingent, in the sense that a loan guarantee or the liability that may occur if a person breaches a contract is contingent. The contingency here, if it is one, is the continued payment of the instalments provided for in the loan instrument, and the very question we must answer is whether the whole unpaid amount of the mortgage constitutes an "existing debt" or whether a debtor's "existing debts" include only the obligation to make the particular payment due at the time of the questioned conveyance.

The language of the statute does not assist the judge's and the debtor's interpretation. The statute asks whether "the present fair salable value of [the debtor's] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Whether or not the full unpaid amount of the instalment debt is to count as such an "existing debt" is not the issue. The statute envisages application of the term "existing debts" to "probable liability" that will become "absolute and matured" at some time in the future. And surely the obligation to make the payments is more

than probable — it is as certain as legal draftsmanship can make it. It is also striking that the statute measures the present value of assets in hand against liabilities that will become "absolute and matured" — i.e., future absolute and matured liabilities.

The judge's view also suggests a result that is at war with common sense. Consider a person with a judgment debt against him of $100,000, assets of $20,000, and an annual salary of $40,000. Such a person is plainly insolvent for purposes of the UFCA, and may not make a conveyance of his assets for less than a fair consideration. By the logic of the decision below, if such a person were to obtain a $100,000 loan, payable in monthly instalments, and put the cash proceeds of the loan into his bank account, he would at that moment have become solvent and be free to make what would otherwise be a fraudulent conveyance. The reason such a result would make little sense is that it would be anomalous to let the proceeds of the loan stand as an asset in calculating insolvency but to exclude the full amount of the corresponding liability. But the same conclusion holds if instead of receiving a cash loan the debtor had received a $100,000 mortgage and sought to include the mortgaged property as an asset at full value on his balance sheet, but not the full amount of the loan as a liability.

Finally the debtor urges, as he did successfully below, that insolvency "in the equitable sense" is the appropriate measure under the UFCA. That term is defined as an inability to meet one's obligations as they become due. See *In re Vadnais Lumber Supply, Inc.*, *supra* at 137. He goes on to argue that the plaintiff bank has not shown — indeed the bank has not attempted to show, because it does not believe it was required to — that the debtor cannot meet his obligations as they become due, and that therefore he is not insolvent "in the inequitable sense." But the invocation of this criteria of insolvency is plainly inapposite. "Insolvency in the equitable sense" is most generally used in bankruptcy law. Persons who may be able to show sufficient assets — often assets of an illiquid sort — to escape a conclusion that they are insolvent in a balance sheet sense, may nevertheless be involuntarily entered into bankruptcy if they do not meet their current obligations. See Bankruptcy Code, 11 U.S.C. § 303(h)(1) (1998) (authorizing relief in involuntary cases where debtor is "generally not paying [its] debts as [they]

become due . . .").[4] Thus equitable insolvency may be a suf-
ficient basis for finding insolvency; the debtor would turn it into
a necessary condition for the purposes of the UFCA.[5]

The purpose of the UFCA is to preserve a debtor's assets so
that creditors may look to them in the event that the debtor
ceases payments or is declared bankrupt. See *Jorden* v. *Ball,*
357 Mass. 468 (1970); *Blumenthal* v. *Blumenthal,* 303 Mass.
275 (1939). Although the debtor may continue to deal with his
assets in ordinary course, he may not give them away and
thereby put them beyond the reach of creditors — which is
precisely what the debtor did in this case.

Such authorities as we have been pointed to or we have been
able to discover support our conclusion that the whole of the
debtor's mortgage debt is to be counted as a liability for the
purpose of determining his insolvency under the UFCA. As we
have discussed, the *Goldstein* case, on which the judge relied,
does not point to a different conclusion, for it speaks of
contingent liabilities in a context where these very large li-
abilities may or may not have been collateralized in favor of the
debtor and he may have enjoyed "substantial rights of indemnity
and contribution with respect to those liabilities . . . ." *Gold-
stein, supra* at 2. Another decision applying our statute, *In re
Tracey,* 88 B.R. 512 (Bankr. D. Mass. 1988), discussed by both
sides, is also unilluminating. The plaintiff trustee sought to set
aside three conveyances. As to the first, the court ruled that the
trustee had not carried his burden of proof since he had sought
to include among the defendant's liabilities those likely to occur
as a result of a conviction for attempted tax evasion at a time
that the conviction was under appeal. As to a subsequent

[4]Though this is not a pure equitable insolvency as it looks to whether the
debtor is actually meeting the obligations rather than whether he could do so
based on his balance sheet, it is markedly closer than the definition of
insolvency contained in § 101(32) of the Bankruptcy Code, which is balance
sheet insolvency. 2 Collier, Bankruptcy par. 303.14(1) (1998).

Though the general test for insolvency under the UFTA is balance sheet
insolvency, the UFTA borrows, as a presumption, this test for involuntary
adjudication under the Bankruptcy Code. Under the UFTA a debtor who is
generally not paying his debts as they become due is presumed insolvent.
UFTA § 2.

[5]Though inability to meet obligations does not conclusively establish
insolvency under the UFCA, courts have found this to be a reliable indication
of insolvency where there is little direct evidence of a debtor's assets and li-
abilities. See, e.g., *Cellar* v. *Holley,* 9 Ohio App. 2d 288 (1967); *Larrimer* v.
*Feeney,* 411 Pa. 604 (1963); *Nisenzon* v. *Sadowski,* 689 A.2d 1037 (R.I.
1997).

conveyance the court ruled that "Tracey's obligations at the time . . . , *not counting his mortgage obligation* equaled and more likely . . . exceeded his assets." *Id.* at 517 (emphasis supplied). The debtor points to this language as supporting his contention, while the bank claims that a mortgage was included in calculating the debtor's liabilities. It is apparent that the *Tracey* court was not focussing on the very issue we consider here, and we are not inclined to consider it. Decisions under § 2 of the UFCA in other jurisdictions, however, are directly on point and support the conclusion we reach now. In *In re Palermini*, 113 B.R. 380, 383 (Bankr. S.D. Ohio 1990), the debtor had argued that "owing bills in and of itself does not constitute insolvency, but, rather, insolvency involves the actual inability to meet one's obligations and/or liabilities." Looking to § 2 of the UFCA, the court ruled that "this definition goes beyond the concept of legal insolvency and even beyond the concept of equitable insolvency (which the Debtor apparently urges) and includes the financial condition of a debtor who has incurred unmatured debts to such an extent that he will not be able to meet them when they become absolute and matured." *Id.*, citing Ohio cases). In *In re Structurlite Plastics Corp.*, 193 B.R. 451, 459-460 (Bankr. S.D. Ohio 1995), the court stated:

> "[T]he statutory language in the UFCA does not call for an analysis which is identical to the commonly understood meaning of an equitable insolvency test. That concept has been defined as the inability to pay one's debts as they become due. This standard is not identical to the UFCA standard, however, because it is not the Debtor's ability to pay its debts immediately after the questioned transfers which the Court must evaluate. Rather, the Court must value the Debtor's assets, not limited by customary balance sheet concepts of inclusion or valuation method, and compare that value to an estimated total of all the Debtor's liabilities, whether such liabilities are included on a conventional balance sheet or not and whether such liabilities would become due at the time of the transfer or at some future date."

The court thus concluded:

> "The UFCA standard for insolvency, therefore, calls for a modified balance sheet approach combined with an

expanded equitable insolvency analysis. In essence, the insolvency test of the UFCA is easier for a plaintiff to show than equitable insolvency would be and is more inclusive than a balance sheet would be." *Id.*

We conclude that, based on the stipulation showing an excess of liabilities over assets, Napoleon was insolvent or rendered insolvent for purpose of § 2 of the UFCA.

### B

The bank also complains that the judge was in error in placing upon the bank the burden of proving Napoleon's insolvency, claiming that once it had shown there had been a conveyance without fair consideration, the burden shifted to Napoleon to show that he was solvent at the time of the conveyance. It is certainly true that the bank had adduced no evidence to show that Napoleon was unable to meet his obligations as they became due. But that is not the correct standard of insolvency under the UFCA. Using the correct standard of insolvency, however, the stipulated facts show quite clearly that Napoleon was insolvent at the time of the transfer and therefore the issue of the allocation of the burden of proof is, strictly speaking, not presented by this case. Moreover, transfers effected after October 8, 1996, the effective date of the UFTA, are governed by that act and we are reluctant to pronounce on an issue under the UFTA in the absence of briefing and argument. Nevertheless we comment briefly on this issue because the judge's general observations on burden of proof were supported by a careful decision of the Appeals Court, *Eliot Discount Corp.* v. *Dame*, 19 Mass. App. Ct. 280 (1985), and thus might be thought to influence the interpretation of the similar issue under the new statute or govern any cases that may still be decided under the old one. In the *Eliot Discount* case, Justice Fine noted that this court in *Kerrigan* v. *Fortunato*, 304 Mass. 617 (1939), had assumed that the burden of proving insolvency was on the person seeking to set aside the conveyance under the UFCA, even though "[t]he issue of the burden of production [was] not one that was pressed by the plaintiff in the *Kerrigan* case . . . ." *Id.* at 284. The court went on to rule that the burden was on the plaintiff because of the general principles that "the burden of producing evidence is usually placed upon the party who is trying to show that which is not normal, customary, honest, or regular . . . [and that] a party making a claim and seeking to

alter the status quo to another party's disadvantage usually has the burden of proving all of the elements of his claim." *Id.* at 285. At the same time the Appeals Court recognized that the debtor in these cases is "the party most familiar with his own financial situation, and the facts regarding that issue are probably more readily available to him . . . ." *Id.* at 283-284.

It is "the majority view that once the plaintiff establishes inadequate consideration, the burden of proving the debtor's solvency then shifts to the party seeking to uphold the transfer." *In re Otis,* 115 B.R. 900, 911 (Bankr. E.D. Mich. 1990). On one side there is the harshness of requiring a person who, so far as has been shown, has done nothing but make a gift or conveyance for inadequate or no consideration, to prove that he is solvent or suffer the reversal of that conveyance. On the other side is the consideration noted by Justice Fine, that it is the conveyor who best knows his financial condition and has the facts bearing upon it. The sensible resolution of this tension was stated by another bankruptcy court in *In re Palermini,* 113 B.R. 380, 383 (Bankr. S.D. Ohio 1990): "[O]nce the [plaintiff] has made a prima facie showing of insolvency, the burden to produce persuasive evidence showing solvency shifts to the Debtor, as the transferor of the property." Thus, when the plaintiff can show an excess of liabilities over assets as revealed by readily available recorded documents supplemented by any information obtained by discovery, it is up to the debtor to show that he is really not insolvent because he is the owner of, say, a rare stamp collection or foreign bank accounts or other items that would contradict the plaintiff's prima facie showing.

At oral argument Napoleon argued that the conveyance should not be set aside, as the interest conveyed to the trust was only the husband's interest in a tenancy by the entireties. Although this matter did come up in the hearing below, it was not mentioned in the briefs of either party here and we have only the transcript of the hearing below to enlighten us on this point. The short answer to Napoleon's belated contention to us here is that it appears that some interest was conveyed for some purpose by Napoleon to "The Kids Trust." Whatever interest was conveyed must be reconveyed because Napoleon was or became insolvent at the time of the conveyance and the conveyance was not made for a fair consideration.

The judgment of the Superior Court is reversed, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*