**In re MI–LOR CORPORATION,
et al., Debtors.**

**Mi–Lor Corporation, et al., Plaintiffs,**

**v.**

**Robert Gottsegen, et al., Defendants.**

**Bankruptcy No. 95–40897 JFQ.
Adversary No. 97–4100.**

United States Bankruptcy Court,
D. Massachusetts.

May 7, 1999.

James M. Liston, Bartlett, Hackett, Feinberg, Gentilli, Liston, Brown & Phalen, P.C., Boston, MA, for Debtors.

Howard M. Brown, Bartlett, Hackett, Feinberg, Gentilli, Liston, Brown & Phalen, P.C., Boston, MA, for Plaintiffs.

Robert S. Potters, Boston, MA, for Defendants.

## DECISION

JAMES F. QUEENAN, Bankruptcy Judge.

The Defendants have moved for summary judgment, primarily on the ground that all causes of action set forth in the complaint are barred by applicable statutes of limitation. On February 26, 1999 the court issued an order denying the motion and reserving jurisdiction to render a decision setting forth its reasons for the denial. Set forth here is that decision.

Mi–Lor Corporation (Mi–Lor) and Professional Brushes, Inc. (PBI) (collectively the Plaintiffs or the Debtors), filed their voluntary chapter 11 petitions on March 3, 1995 and March 7, 1995 respectively. On February 28, 1997 the Plaintiffs brought this adversary proceeding against Robert Gottsegen (Robert), Michael Gottsegen (Michael), Lori Gottsegen Zinman (Lori), Dorothy Gottsegen (Dorothy), and Lawrence Gottsegen (Lawrence). Robert is the father of Michael and Lori; Dorothy is Robert's ex-wife. Lawrence's relationship does not appear from the papers. He is sued only in his capacity as trustee of two trusts, one for the benefit of Michael and the other for the benefit of Lori. Reference herein to the "Defendants" means all defendants except Lawrence.

Plaintiffs allege in their complaint[1] that Robert was a founder of both Debtors, that he was their president and director until 1990, and that he engaged in a pattern of using corporate funds to pay his own personal expenses and those of others for no business purpose or benefit. Expenditures for others included payments to his mother, payments to Dorothy, rent for an apartment occupied by Michael, salary to Lori when she was a full time student, and payment of personal expenses of his brother, Stuart Gottsegen (Stuart). The complaint alleges that similar corporate expenditures were made on behalf of Lawrence Wald (Wald), who was a director and treasurer of the Debtors.[2]

The Plaintiffs also complain about a stock redemption agreement dated March 31, 1990 under which shares of Mi–Lor and PBI were redeemed. Shares of Mi–Lor were redeemed from the following stockholders in these amounts: Michael, 940 shares; Lori, 940 shares; Dorothy, 100 shares; Lawrence as trustee for Michael, 250 shares; Lawrence as trustee for Lori, 250 shares. The complaint sets forth various payments made under these stock redemptions, including the assignment of rights to receive proceeds from the sale of the assets of a former subsidiary of Mi–Lor, Solo Products, Inc.

The other principal event the Plaintiffs complain of is a $300,000 payment made by Mi–Lor to Robert on February 1, 1990. Although the books of Mi–Lor show this as a payment on Robert's loan to the corporation, the Plaintiffs allege Mi–Lor never received fair consideration in the transaction.

The complaint contains nine counts: count I—conversion; count II—breach of fiduciary duty of care and loyalty; count III—unjust enrichment, constructive trust;

---

1. I refer to the complaint as originally filed and in existence at the time of the order denying the motion for summary judgment. The complaint has since been amended to substitute as plaintiffs the trustees of a credi-

tor trust created under a confirmed joint liquidating plan of reorganization.

2. The Plaintiffs have settled a separate action against Wald.

count IV—waste; counts V–VIII—Uniform Fraudulent Conveyances Act (UFCA) (§§ 4–7); and count IX—improper distributions under Massachusetts General Laws chapter 156B, § 61. The Defendants' answer pleaded the statute of limitations. They assert that counts I–IV are barred by the three year statute applicable to action of tort, and that counts V–VIII are barred by the four year statute set forth in the Uniform Fraudulent Transfer Act (UFTA). They contend the Plaintiffs lack standing to bring count IX.

## I. FACTS

Lawrence, who is now the chief executive officer and a director of Mi–Lor, has executed a lengthy affidavit in support of the Plaintiffs' opposition to the Defendants' motion. Incorporated as part of the affidavit are various pleadings filed by Robert and others in state court litigation between Mi–Lor and Robert.

The parties agree on the dates of the principal events and court filings set forth in Lawrence's affidavit. Those dates form the framework of their dispute over application of the various statutes of limitation. Lawrence's affidavit also goes into matters which the Plaintiffs assert are grounds for tolling the three year tort statute of limitations. Under principles of summary judgment, I examine the record and set forth the facts "in the light most flattering to the nonmovant and indulging all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

During the years prior to March 31, 1990, the officers and directors of Mi–Lor were as follows: Robert—president and director; Wald—treasurer, clerk and director; Stuart—director. Robert controlled Mi–Lor as trustee of a voting trust which held 65% of the corporation's voting shares.

On March 31, 1990, the stock redemptions previously referred to took place. The voting trust was terminated immediately thereafter. Robert resigned as an officer and director on that date and the composition of the officers and directors of Mi–Lor was then changed to the following: Wald—president, treasurer, clerk and director; Stuart—director; Lawrence—director. Wald died on December 20, 1991. As of March 31, 1992, Mi–Lor's officers and directors were as follows: Stuart—president and director; Lawrence—director; Steven Gottsegen (Steven), Lawrence's son—director.

In early 1992 Lawrence became aware for the first time of Wald's alleged misuse of Mi–Lor's funds for Wald's personal expenses and those of his family. This resulted in state court litigation with Wald's estate, which commenced on July 31, 1992. In the course of this litigation counsel for Wald's estate obtained through discovery information indicating that Robert had also misused Mi–Lor's funds. It was through these discovery proceedings that Lawrence first learned of Robert's alleged misuse.

On June 15, 1994, Robert, Michael, Lori and the two trusts commenced action against Mi–Lor in state court alleging breach of Mi–Lor's obligation to make additional payments under the stock redemption agreement which they claimed were due once Mi–Lor had achieved a specified level of pre-tax earnings. The complaint also alleged fraud on the part of Mi–Lor in the termination of the voting trust. Mi–Lor having filed no answer, the court on January 20, 1995 entered a default judgment which granted monetary damages of $226,984.80. The judgment also reinstated the voting trust and extended its termination date to March 31, 1999. On February 10, 1995, the parties entered into a settlement agreement under which the voting trust was to be once again terminated and Robert was to be elected a director of Mi–Lor. Robert agreed to do nothing to prevent Mi–Lor from filing a chapter 11 petition, which thereafter took place on March 3, 1995.

## II. THREE YEAR TORT STATUTE OF LIMITATIONS

■ The parties agree that counts I through IV are governed by the Massachusetts statute of limitations governing actions of tort, which provides that "actions of tort . . . shall be commenced only within three years next after the cause of action accrues." Mass.Ann.Laws ch. 260, § 2A (Law.Co-op.1992). Robert's acts of alleged malfeasance occurred between 1978 and 1990, ending with his resignation on March 31, 1990. Absent tolling, the three year tort statute ran on March 31, 1993, long before the bankruptcy filings in March of 1995 and the commencement of this suit on February 28, 1997.

The Plaintiffs contend the statute was tolled from March 31, 1990 to some time after July 31, 1992. This tolling, they say, is the result of (i) Mi–Lor having no disinterested and independent majority of directors until March 31, 1992, when Lawrence and Steven became a board majority, and (ii) Lawrence and Steven not learning of Robert's actions until after July 31, 1992 as the result of discovery proceedings in the litigation commenced on that date.

■ I conclude the statute was tolled. "[T]he repudiation of trust and fraudulent concealment doctrines prevent the statute of limitations from running until knowledge is gained by those who have the power and responsibility to act on the corporation's behalf and who are not themselves involved in the wrongdoing that is the basis for the cause of action." *Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 677 N.E.2d 159, 176 (1997). When suit is instituted against a fiduciary based on malfeasance, the repudiation of trust and fraudulent concealment doctrines recognize the fiduciary's obligation of disclosure. Because of this, the doctrines require actual knowledge by the plaintiff and reject the usual rule that the statute of limitations begins to run upon the occurrence of an event which should have put the plaintiff on notice of facts giving rise to the cause of action. *See id.* at 174. *Demoulas* was a shareholder derivative suit. The court treated as the injured party the corporation for whose benefit a minority shareholder had brought suit. For the statute to begin to run the court required knowledge by disinterested directors who constitute a majority of the board. It viewed as interested not only the alleged wrongdoers but also those who had business dealings with them or who stood to benefit from the transactions at issue. *See id.* at 176.

Stuart, the beneficiary of some of Robert's alleged misuse of corporate funds, clearly fails the test of disinterestedness. So too does Wald. He used corporate funds for his own personal expenses and those of his relatives. It was against Wald's interest for him to cause Mi–Lor to bring suit against Robert. If he did, Robert would almost certainly do what Wald's estate later did to Robert—expose through the discovery process Wald's own misuse of corporate funds. Thus the statute was tolled during the period when Stuart and Wald constituted a board majority, and was further tolled until a disinterested board majority, in the persons of Lawrence and Steven, acquired the requisite knowledge after July 31, 1992.

■ The three year tort statute of limitations therefore did not run until some time after July 31, 1995. This adversary proceeding was not commenced until February 28, 1997. That is not fatal. The bankruptcy filings took place in March of 1995, within the three year period. Section 108(a) of the Bankruptcy Code does the rest. "If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee [or debtor in possession pursuant to § 1107(a)] may commence such action only before the later of (i) the end of such period . . . or (2) two years after the order for relief." 11 U.S.C.S. § 108(a) (Law.Co-

op.1997). The orders for relief having been entered in March of 1995, the commencement of this action on February 28, 1997 was timely.

■ It was for this reason that the order of February 26, 1999 denied the Defendants' motion for summary judgment as to the tort statute of limitations. On further reflection, I conclude that the Plaintiffs are entitled to partial summary judgment in their favor on this issue, not just denial of the Defendants' motion for summary judgment. As the parties with the burden of proof on the affirmative defense of the statute of limitations, to avoid summary judgment against them the Defendants may not merely rest on their pleadings. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It makes no difference that the Plaintiffs have filed no cross-motion for partial summary judgment on this limitation issue. When the moving party has been afforded the opportunity to submit material contesting factual assertions in the nonmovant's opposition, and the movant fails to do so, summary judgment may be awarded the nonmovant. 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720 (3d ed.1998). The Defendants have chosen to rest on Robert's affidavit, filed with their motion, in which Robert merely asserts his limited involvement with Mi–Lor after his resignation of March 31, 1990. Defendants have made no attempt to contradict the assertions in Lawrence's affidavit as to the circumstances justifying tolling. Indeed, some of the attachments to Robert's affidavit confirm these circumstances.

## III. SIX YEAR UFCA STATUTE OF LIMITATIONS

Counts V through VIII are grounded on sections of the Uniform Fraudulent Conveyance Act (UFCA), as formerly in effect in Massachusetts as Mass.Gen.Laws ch. 109A. The statute gives avoidance rights to creditors under certain circumstances. Under section 544(b)(1) of the Bankruptcy Code, "the trustee [or debtor in possession pursuant to § 1107(a)] may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502...." 11 U.S.C.S. § 544(b)(1) (Law.Co-op.1997). So long as such a creditor exists, the trustee may assert that creditor's avoidance rights for the benefit of the entire bankruptcy estate and all its creditors, not just for the benefit of that creditor in the amount of the creditor's claim. *See Moore v. Bay,* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931). The Plaintiffs assert the avoidance rights of one or more creditors holding allowable claims pursuant to contracts with the Debtors.[3]

■ The UFCA contains no statute of limitations, so courts are left to apply whatever general statute of limitations properly governs the fraudulent conveyance action. The Massachusetts decisions establish that the statute of limitations governing a fraudulent transfer case is the limitations statute applicable to the claim of the creditor whose avoidance rights are being asserted. *See Desmond v. Moffie,* 375 F.2d 742 (1st Cir.1967); *Stevens Linen Assocs., Inc. v. Crawford (In re Stevens Linen Assocs., Inc.),* 156 B.R. 718 (Bankr. D.Mass.1993). Because the Plaintiffs are asserting the avoidance rights of contract claimants, the contract statute of limitations governs. This is a six year statute.

---

**3.** The original complaint fails to expressly assert such rights. The amended complaint

cures this lapse.

*See* Mass.Ann.Laws ch. 260, § 2 (Law.Co-op.1992). The fraudulent transfers complained of, the stock redemptions and the $300,000 payment to Robert, took place in February and March of 1990. Because the bankruptcy filings occurred in March of 1995, within the six year period, there is no limitations bar.

■ Not so fast, say the Defendants. They point out, correctly, that Massachusetts has repealed the UFCA and replaced it with the more modern Uniform Fraudulent Transfer Act (UFTA) by legislation approved on July 8, 1996 and effective October 6, 1996. *See* St. 1996, c. 157. The UFTA was therefore in effect prior to the February 28, 1997 commencement date of the present action.

Section 10 of the UFTA, as enacted in Massachusetts, provides in pertinent part as follows:

A cause of action with respect to a fraudulent transfer or obligation under this chapter shall be extinguished unless action is brought:

(a) under paragraph (1) of subsection (a) of section five [transfers made or obligations incurred with actual intent to hinder, delay or defraud], within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(b) under paragraph (2) of subsection (a) of section five [transfers or obligations lacking reasonably equivalent value which leave the debtor with unreasonably small capital] or subsection (a) of section six [transfers or obligations without reasonably equivalent value which leave the debtor insolvent], within four years after the transfer was made or the obligation was incurred; or ...

Mass.Ann.Laws ch. 109A, § 10 (Law.Co-op.1995 & Supp.1999).

Section 10 of the UFTA, the Defendants contend, is the governing statute of limitations. Because as to the 1990 transactions its four year period expired in 1994, the Defendants assert section 10 bars the present suit because this suit is based on rights existing in 1995, the year these bankruptcy cases were filed.

■ To apply section 10's four year proscription to the causes of action arising in 1990 would obviously be giving this 1996 legislation retroactive effect. Massachusetts courts generally avoid such retroactive application. "The general rule of interpretation is that all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of law and the effect upon existing rights, remedies and obligations.... It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action." *First Fed. Sav. & Loan Ass'n v. Napoleon,* 428 Mass. 371, 701 N.E.2d 350, 352 (1998) (quoting *Child Support Enforcement Div. of Alaska v. Brenckle,* 424 Mass. 214, 675 N.E.2d 390, 393 (1997) (quoting *Hanscom v. Malden & Melrose Gaslight Co.,* 220 Mass. 1, 107 N.E. 426, 427–28 (1914))).

■ The Defendants observe, again correctly, that being procedural a statute of limitations is given retroactive effect in Massachusetts, so that legislation containing a shortened limitations period governs a pre-existing cause of action so long as the interval between the legislation's approval and effective dates is sufficiently long to afford a reasonable opportunity for the commencement of suit. *See Cioffi v. Guenther,* 374 Mass. 1, 370 N.E.2d 1003 (1977) (cause of action occurring in 1971 barred by shortened statute of limitations approved June 19, 1975 and effective January 1, 1976 because statute was procedural only and interval afforded sufficient time

for commencement of suit); *Brookline v. Carey*, 355 Mass. 424, 245 N.E.2d 446 (1969) (shortened limitations statute applied to pre-existing cause of action where statute allowed 7½ years for suit commencement); *Mulvey v. Boston*, 197 Mass. 178, 83 N.E. 402 (1908) (legislation shortening limitations period from six to two years given retroactive effect because there was thirty day interval between approval of act and its effective date). Based on this case law, the Defendants say, Massachusetts courts would rule that the ninety day interval between the approval and effective dates of the UFTA in Massachusetts gave creditors (or the Plaintiffs asserting their rights) sufficient time to bring suit and thereby avoid the four year requirement of the UFTA. That being so, and because a statute of limitations is procedural, the Defendants contend that Massachusetts courts would apply section 10 retroactively to bar these causes of action accruing in 1990.

There is a fatal flaw to the Defendants' argument. Section 10 of the UFTA is a substantive rather than a procedural statute. It operates to terminate the cause of action itself at the end of the four year period, not merely to limit the remedy. Section 10 says the cause of action "shall be extinguished unless the action is brought" within the prescribed period. It is therefore a statute of repose rather than of limitations.

Although subtle, this distinction is real and recognized by Massachusetts courts. "A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues.... A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered." *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514, 516 (1982).

*Klein* dealt with section 2B of chapter 260, which provided at the time:

Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the performance or furnishing of such design, planning, construction or general administration.

*See id.* at 516–17.

The design under attack in *Klein* had been furnished no later than 1967. Section 2B was enacted in 1968 and the plaintiff was injured in 1976. Recognizing the statute's outright six year limitation without regard to when the cause of action accrued, the court ruled this was a statute of repose whose period ran even prior to the plaintiff being injured.[4] *See McDonough v. Marr Scaffolding Co.*, 412 Mass. 636, 591 N.E.2d 1079 (1992) (applying section 2A as a statute of repose).

The difference between a statute of limitation and a statute of repose can be crucial where the plaintiff asserts circumstances which would justify the tolling of a limitations statute. *Tindol v. Boston Housing Authority*, 396 Mass. 515, 487 N.E.2d 488 (1986), involved another action for negligent design under section 2A of chapter 260. The plaintiff sought tolling for the period prior to his attaining the age of majority, pursuant to Mass.Gen.Laws ch. 260, § 7. The court ruled that tolling applies only to a statute of limitations, not one of repose such as section 2A. A statute of repose has further ramifications. An amendment to a complaint adding a party normally relates back to the date of the original filing for purposes of a statute of limitations. *See* Mass.Ann.Laws ch.

---

**4.** The court rejected plaintiff's due process argument on the ground the injury occurred after the statute's effective date.

231, § 31 (Law.Co-op.1986 & Supp.1998); Mass.R.Civ.P. 15(c). This is not so as to a statute of repose. A defendant added to the case by amendment is entitled to dismissal if the amendment falls outside the repose period even though the complaint was filed within the period. This is because the cause of action has been extinguished. *See James Ferrera & Sons, Inc. v. Samuels,* 21 Mass.App.Ct. 170, 486 N.E.2d 58 (1985).

Because the running of a statute of repose does not depend upon accrual of the plaintiff's cause of action, it is immaterial when the plaintiff acquired knowledge of facts which inform him, or which should inform him, of the existence of a cause of action. Subsection (b) of section 10, pertaining to transactions leaving a debtor insolvent or with unreasonably small capital, operates without regard to a plaintiff's knowledge and the resulting accrual of his cause of action. This is its clear implication in light of subsection (a), which sets the bar at the later of four years after the transaction complained of or one year after the transaction "was or could reasonably have been discovered by the claimant."

The substantive nature of this UFTA provision is confirmed by its official UFTA comment. The comment states: "Its purpose is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy." Comment, UFTA § 9.

I conclude, based upon the statute's wording, its official comment and Massachusetts case law, that the Supreme Judicial Court of Massachusetts would treat subsection (b) of section 10 as a substantive provision not to be given retroactive effect. The four year bar of subsection (b) does not, in the words of the Massachusetts court, "relate only to the remedy ... and ... control future procedure in reference to previously existing causes of action." *Cioffi,* 370 N.E.2d at 1005.

The question of substance vs. procedure, and hence retroactivity, is a bit more problematic as to subsection (a). That sub-

section expressly recognizes the significance of discovery, the usual trigger for the running of a procedural statute of limitations. Yet, upon lapse of the requisite period, the statute does not raise a procedural bar in terms of prohibiting commencement of an action, the usual wording of a typical statute of limitations. Instead it says the "cause of action" is "extinguished." As discussed, these words go to the substance of the right and not merely the remedy.

Other considerations point away from treating subsection (a) as a remedial statute having retroactive effect. It seems unlikely that the draftsmen intended subsection (b) to affect rights and subsection (a) to affect merely the remedy. This thought is enforced by the official comment, which makes no distinction between the two subsections in its description of the entire statute as a bar against "the right and not merely the remedy." Moreover, it is telling that section 10 is part of a comprehensive act. The other sections are undeniably substantive provisions which, as pointed out in *Napoleon,* the Massachusetts courts would not apply retroactively. *See* 701 N.E.2d at 352.

There is a simpler, literal reason for section 10 of the UFTA not to govern here. As the court in *Napoleon* indicates, and as the Defendants apparently concede, the other sections of the UFTA are clearly substantive provisions having no retroactive effect. That being so, section 10 cannot, literally, apply. It expressly governs only actions brought under the sections of the UFTA to which it refers. This action is not and cannot be brought under the UFTA. It follows that only the general statute of limitations applicable to UFCA actions can govern this case. For this reason courts consider the question of the retroactive effect of the UFTA to be the same question for all its sections, including its statute of repose. *See, e.g., Official Unsecured Creditors' Comm. v. Rachles*

*(In re S. Rachles, Inc.)*, 131 B.R. 782 (Bankr.D.N.J.1991).

The weight of authority, moreover, opposes applying any provision of the UFTA, including its four year bar, to pre-existing causes of action. Judge Feeney of this district has so held after an exhaustive examination of the case law. *See Carpenter v. Granderson (In re Granderson)*, 214 B.R. 671 (Bankr.D.Mass.1997) and decisions cited. Although, because the issue was not before it, the Massachusetts court in *Napoleon* did not endorse the result in *Granderson*, neither did the court reject *Granderson's* result.

Particularly instructive on the present question is the decision in *Heaper v. Brown (In re Heaper)*, 214 B.R. 576 (8th Cir. BAP 1997). Recognizing the distinction in Missouri law between substantive and procedural legislation as to the legislation's retroactive effect *vel non*, the panel held the UFTA's four year bar was substantive and hence not retroactive. It did so largely because of the language saying the cause of action is "extinguished" at the end of the four year period. The panel was also influenced by the fact that the four year bar was contained in one section of an act whose other provisions were clearly substantive.

## IV. THE TWO YEAR EXTENSION OF SECTION 546(a)

The Defendants have a final string to their bow. They observe that the six year limitation period of the UFCA expires by March 31, 1996 as to the transactions under attack here. Conceding for the moment that the six year limitation statute controls, they stress that the present action was not commenced until February 28, 1997. They contend the two year extension granted by section 108(a) is of no help to the Plaintiffs because a limitation on the exercise of avoidance rights of a creditor does not come within the reference in section 108(a) to a statute which "fixes a period within which the debtor may commence an action...." 11

U.S.C.S. § 108(a). I agree that section 108(a) applies only to a debtor's prepetition cause of action.

The Defendants continue. They say the Plaintiffs, in their exercise under section 544(b) of a creditor's avoidance rights, can have no greater rights at the time of suit than does the creditor whose rights they assert. Because no creditor could bring suit under the UFCA after March 31, 1996, the Defendants contend this action is time-barred.

The Defendants' difficulty here is that the bankruptcy filings occurred in March of 1995, within the six year period. Section 546(a) of the Bankruptcy Code provides in pertinent part:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> (1) the later of—
>
> (A) 2 years after the entry of the order for relief; or
>
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A)...

11 U.S.C.S. § 546(a) (Law.Co-op.1997).

The Plaintiffs maintain that section 546(a) gives the estate representative an additional two years from the bankruptcy filing to bring suit in the exercise of the estate's section 544(b) avoidance rights. Not so, say the Defendants. According to them, section 546(a) does not extend the period of a state statute of limitations; it instead places an *additional* time bar on the action. As a result, their argument runs, suit commencement on February 26, 1997 was time-barred because these transfers were not then, in the words of section 544(b)(1), "voidable under applicable law by a creditor...."

■ I disagree. I construe the avoidance rights referred to in section 544(b)(1) to be those of the creditor as they existed immediately prior to the petition filing date. I do so for two reasons.

First, no creditor has individual avoidance rights after the petition filing. Bankruptcy being a collective proceeding for the benefit of all creditors, avoidance rights belong only to the estate representative; upon their exercise the property recovered becomes part of the bankruptcy estate. *See* 11 U.S.C.S. § 541(a)(3) (Law. Co-op.1997); *Rosania v. Haligas (In re Dry Wall Supply, Inc.)*, 111 B.R. 933, 937 (D.Col.1990) (holding individual creditor lacks ability to assert avoidance rights postpetition). Second, the policy behind section 546(a) is to give the estate representative sufficient time to investigate for the existence of facts that would support actions under its enumerated Code sections. The decisions so hold. *See, e.g., Dry Wall,* 111 B.R. 933; *Gibbons v. First Fidelity Bank (In re Princeton–New York Investors, Inc.)*, 199 B.R. 285 (Bankr. D.N.J.1996) *aff'd,* 219 B.R. 55 (D.N.J. 1998); *Mahoney, Trocki & Assocs., Inc. v. Kunzman (In re Mahoney, Trocki & Assocs., Inc.)*, 111 B.R. 914 (Bankr.S.D.Cal. 1990).

## V. COUNT IX—CHAPTER 156B, § 61

■ In count IX, the Plaintiffs assert a cause of action under chapter 156B, § 61. *See* Mass.Ann.Laws ch. 156B, § 61 (Law. Co-op.1979 & Supp.1998). This statute imposes liability, in favor of the corporation, upon directors who vote to authorize a stockholder distribution by the corporation if the corporation is, or is thereby rendered, insolvent or bankrupt. The Defendants contend count IX does not set forth a cause of action. They do so for the curious reason that another statute since repealed, section 38A of chapter 156, requires a creditor seeking the benefit of the statute to first make written demand upon the corporation for payment of the credi-

tor's claim. Merely to state this frivolous argument is to refute it.

An order has accordingly entered amending the order of February 26, 1999 to grant partial summary judgment to the Plaintiffs on all the Defendants' defenses under statutes of limitation or repose.