**BEAL BANK, SSB, a Texas Corporation, Plaintiff, Appellee,**

v.

**Felix J. PITTORINO, etc., et al., Defendants, Appellees.**

**Ralph P. Amelia, Anna L. Amelia, Loryann K. Amelia, Defendants, Appellants.**

**No. 98–1029.**

United States Court of Appeals, First Circuit.

Heard Feb. 3, 1999.

Decided May 24, 1999.

Robert O. Berger and John Lamb for appellants.

David D. Pavek, with whom David Pavek & Associates, William V. Sopp, and Finnegan, Hickey, Dinsmoor & Johnson, P.C., were on brief for appellee.

Before SELYA, STAHL and LIPEZ, Circuit Judges.

STAHL, Circuit Judge.

Defendant-appellant Ralph P. Amelia appeals the district court's entry of judgment against him in this fraudulent conveyance action.[1] After considering Amelia's arguments, we affirm.

## I.

This case finds its genesis in a number of loans issued by Vanguard Savings Bank to Felix J. Pittorino from 1989 to 1991. Several of the loans were guarantied by property of Pigeon Hill Estates Trust ("Pigeon Hill Trust"), for which Pittorino and Amelia were trustees. Vanguard went into receivership in March 1992, and the Federal Deposit Insurance Corporation ("FDIC") was appointed liquidating agent. Then, in November 1995, the FDIC assigned its Vanguard loans to plaintiff-appellee Beal Bank. On March 22, 1996, Beal Bank sued Pittorino individually, Pittorino and Amelia as trustees of Pigeon Hill Trust, and other related entities to collect on the unpaid loans.

The 1996 action was bifurcated: the claims against Pittorino individually were severed from the claims against Pittorino and Amelia as trustees. The former were tried before a jury. On April 8, 1996, the jury returned a verdict against Pittorino in the amount of $7.8 million. The trial against Pittorino and Amelia as trustees was scheduled to begin on September 17, 1996. Prior to that date, the trustees entered settlement negotiations with Beal Bank and reported to the district court that they had agreed to a settlement. The court memorialized the parties' settlement agreement by entering a January 7, 1997 judgment directing Pigeon Hill Trust to pay Beal Bank $3 million.[2]

After entry of the final order, Beal Bank initiated Fed.R.Civ.P. 69 discovery upon judgment defendants Pittorino and the trustees of Pigeon Hill Trust. Through discovery, Beal Bank learned that Pittorino and Amelia had transferred the bulk of Pigeon Hill Trusts's assets to Pitt Construction Corporation ("Pitt") and ALA Realty Trust ("ALA"). Pittorino was the president, treasurer, and controlling shareholder of Pitt.[3] Amelia was the sole trustee of ALA, and his wife was the sole beneficiary. These transfers occurred on May 10, 1996, after the jury verdict had been rendered against Pittorino and while the claims against Pittorino and Amelia as trustees were still pending.

Alleging that the May 10 conveyances were fraudulent and therefore voidable under Massachusetts law, on April 28, 1997, Beal Bank filed the instant action against Pigeon Hill Trust, Pittorino, and Amelia.

---

1. There are other named defendants-appellants, but their arguments are derivative of Amelia's claims. We therefore will discuss the arguments as being made by Amelia only.

2. The parties seem to have been unable to agree on all the terms of the settlement. Nevertheless, the trustees agreed to the district court's $3 million judgment against them.

3. Although there was some dispute at trial as to whether Pittorino was a majority or minority shareholder, it was established that he exercised control over the corporation.

On June 6, 1997, Beal Bank moved for summary judgment. After a hearing, the court granted summary judgment with respect to Amelia's defense of estoppel, ordered a jury trial with respect to Amelia's defense of mutual mistake, and ordered a bench trial with respect to the remainder of the fraudulent conveyance claim. The jury rejected Amelia's mutual mistake defense, and, after the bench trial, the district court ordered the conveyances set aside as fraudulent.

On appeal, Amelia essentially contends that the district court (1) erred in awarding Beal Bank summary judgment on his estoppel defense; (2) made a number of errors in its application of Massachusetts's fraudulent conveyance statute; and (3) delivered an erroneous jury instruction. We consider each argument in turn.

## II.

### A

■ Amelia alleges that the district court, during a hearing on Beal Bank's summary judgment motion, improperly "str[uck] various standard contract defenses." Yet, the only defense discussed in Amelia's brief is the defense of estoppel. Therefore, we consider only whether the district court erred in striking this defense. All other arguments have been waived. *See King v. Town of Hanover,* 116 F.3d 965, 970 (1st Cir.1997) (stating that undeveloped arguments are waived).

■ A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense. *See, e.g., FDIC v. LeBlanc,* 85 F.3d 815, 820–21 (1st Cir.1996). We review the district court's ruling *de novo, see Terry v. Bayer Corp.,* 145 F.3d 28, 34 (1st Cir.1998), drawing all inferences

in the light most favorable to Amelia, *see LeBlanc,* 85 F.3d at 817.

■ The basis for Amelia's argument that Beal Bank should be estopped from enforcing the guaranty on the Pittorino loans seems to be that: (1) the FDIC (Beal Bank's predecessor in interest) had stated that it would not enforce the guaranty against Pigeon Hill Trust;[4] (2) based on this statement, Amelia expended legal fees litigating an earlier state court action against Pittorino to obtain an equity interest in the Pigeon Hill Trust property; and (3) Amelia therefore suffered a detriment as a result of the FDIC's representations.[5] *Cf. Clickner v. City of Lowell,* 422 Mass. 539, 544, 663 N.E.2d 852 (1996) (setting forth the elements of the estoppel defense).

■ Because the FDIC's alleged statement was not committed to writing, it cannot form the basis for an estoppel defense. *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); 12 U.S.C. § 1823(e). The *D'Oench, Duhme* doctrine prevents a party from asserting an oral agreement as the basis for either a claim or defense against the FDIC, *see LeBlanc,* 85 F.3d at 821, or against any of its assignees, *see NCNB Texas Nat. Bank v. Johnson,* 11 F.3d 1260, 1268 (5th Cir.1994); *Community Bank of the Ozarks v. FDIC,* 984 F.2d 254, 257 (8th Cir.1993); *UMLIC–Nine Corp. v. Lipan Springs Dev. Corp.,* 168 F.3d 1173, 1179 (10th Cir.1999). Similarly, section 1823(e) "bars anyone from asserting against the FDIC any 'agreement' that is not in writing and is not properly recorded in the records of the bank." *LeBlanc,* 85 F.3d at 821.

■ During the hearing, the court asked counsel whether Amelia had any

4. It is not clear to whom this statement was allegedly made.

5. As best as we can decipher, this is the theory Amelia presented, somewhat inartfully, to the district court. Amelia's briefs on ap-

peal do not set forth any facts that support the estoppel defense. Any other theory is insufficiently developed and therefore waived. *See King,* 116 F.3d at 970.

document memorializing the alleged agreement by the FDIC. Amelia introduced an affidavit that had been executed by an attorney for the FDIC, which stated that there existed an internal memorandum from the FDIC legal department to the credit file indicating that the legal department had determined the guaranty to be void because of a mutual mistake. Neither the affidavit nor the memorandum, however, constitutes an agreement that the FDIC would not enforce the guaranty against Pigeon Hill Trust.[6] Nor do they satisfy the other requirements of section 1823(e). *See* 12 U.S.C. § 1823(e). The district court thus correctly entered summary judgment on Amelia's estoppel defense.

## B

■ Amelia also contends that the court, during the bench trial, made two errors in its application of the Massachusetts fraudulent conveyance statute. Amelia's first argument, that the court erred by applying the Uniform Fraudulent Conveyance Act ("UFCA"), *see* Mass. Gen. Laws ch. 109A (West 1990) (repealed), rather than the Uniform Fraudulent Transfer Act ("UFTA"), *see* Mass. Gen. Laws ch. 109A (effective Oct. 8, 1996), has no merit. The transfers occurred on May 10, 1996. The case therefore is governed by the UFCA, which was in effect at that time. *See First Federal Savings & Loan*

*Ass'n of Galion, OH v. Napoleon,* 428 Mass. 371, 373, 701 N.E.2d 350 (1998) (holding that the UFTA does not apply retroactively to transfers that occurred before its effective date).[7]

■ Amelia's second argument, that the district court erred in finding that the May 10 conveyances were made with an actual intent to defraud Beal Bank, also fails. A finding of fraudulent intent is a finding of fact, which we will not disturb absent clear error. *See Max Sugarman Funeral Home, Inc. v. ADB Investors,* 926 F.2d 1248, 1255 (1st Cir.1991). We find no clear error here.

Under the UFCA, a "conveyance made ... with actual intent ... to hinder, delay or defraud either present or future creditors, is fraudulent." Mass. Gen. Laws ch. 109A, § 7. It is the rare case in which a transferor admits that he intended to make an impermissible transfer. Thus, courts often infer fraudulent intent by considering certain "badges of fraud," the most common of which are

(1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and (5) retention by the debtor of the prop-

---

**6.** In his reply brief, Amelia states, without citation to the record, that he "made an offer of proof to the [t]rial [c]ourt that confirming correspondence would be produced contemporaneous to the FDIC's actual issuance of an executed [m]ortgage [d]ischarge." Appellant's Reply Br. at 21. This statement is inaccurate and misleading. During the conference, Amelia's counsel did make the following cryptic remarks: "The FDIC then issued a decision that they investigated the unlimited guaranty [the guaranty at issue here], determined it to be of no legal effect and that therefore your discharge shall be coming." In response to this proffer, the court immediately asked whether there was any documentary evidence rescinding Pigeon Hill Trusts' obligations on the guaranty.

Counsel responded only that there existed an internal memorandum and an affidavit.

**7.** In his brief, Amelia contends that the UFTA applies to this action because "the record includes transfers in November and December 1996 and February, March and May 1997." Appellant's Br. at 22. As if to support this contention, eleven pages of the brief are devoted to describing a series of transactions that occurred after the May 10, 1996 conveyances. This description appears in a section entitled "Statement of Real Estate Transfers Relevant to the Parties of the Case." Amelia's counsel, however, admitted during oral argument that these conveyances are irrelevant to the instant action.

erty involved in the putative transfer.

*Palmer v. Murphy*, 42 Mass.App.Ct. 334, 345–46, 677 N.E.2d 247 (1997) (citing *FDIC v. Anchor Properties*, 13 F.3d 27, 32 (1st Cir.1994) (interpreting the UFCA)). "The presence of a single badge of fraud may spur mere suspicion, the confluence of several can constitute conclusive evidence of an actual intent to defraud." *Max Sugarman Funeral Home, Inc.*, 926 F.2d at 1254–55; *accord Anchor Properties*, 13 F.3d at 32.

The May 10 conveyances show each of these common badges of fraud. They occurred after a jury had rendered a $7.8 million verdict against Pittorino and while the claims against Amelia and Pittorino as trustees were still pending. Thus, the trustees faced actual litigation in which their co-defendant had already been held liable. Next, it is undisputed that Pittorino and Amelia transferred almost all of the trust property. The conveyances therefore constituted a "transfer of all or substantially all of [debtor Pigeon Hill Trust's] property." Third, the transfers left Pigeon Hill Trust with little-to-no assets, yet potentially liable for the outstanding guaranty on the unpaid Pittorino loans. This constitutes *de facto* "insolvency or other unmanageable indebtedness." Fourth, it is undisputed that there was a special relationship between the transferors and the transferees: Pittorino is the controlling shareholder of Pitt, while Amelia and his wife are respectively the sole trustee and beneficiary of ALA. For that same reason, the trustees retained control over the property involved in the putative transfer, thereby constituting a fifth badge of fraud. The district court's finding of fraudulent intent is affirmed.[8]

## C

▮ Finally, Amelia assigns error to a jury instruction given at the conclusion of the trial on his mutual mistake defense. That instruction related to one John Driscoll, whom Michael Oleksak, the loan officer for Vanguard, testified had been counsel to Vanguard and had drafted the guaranty in question. The court instructed the jury:

> But also there's Mr. Driscoll. If you believe the testimony, Mr. Driscoll was also an agent of the bank. Mr. Driscoll was the lawyer on behalf of the bank. Were the papers, if you believe the testimony about the drafting of the papers, were these papers drafted the way the bank wanted them drafted? Or, has Mr. Amelia proved that in fact there was a mistake on the part of the bank and that mistake was mutual, was the same as the mistake Mr. Amelia made when he signed the papers.

Citing *DeVaux v. American Home Assurance Co.*, 387 Mass. 814, 444 N.E.2d 355 (1983)[9] and a treatise on legal malpractice, Amelia contends that the court's instruction "reflects a misunderstanding of basic agency law," because "[a] lawyer cannot be an agent of his client unless there is express authorization for such conduct." Then, swiftly changing course and without citing to any relevant authority, Amelia

---

**8.** The other arguments made by Amelia regarding the court's application of the UFCA are hopelessly confused. Initially, Amelia contends that the district court misapplied the UFCA by failing to find either actual or constructive fraud. *See* Appellant's Br. at 25 ("The judge in this case did not find that Mr. Amelia committed actual fraud or constructive fraud."). Later in the same brief, however, Amelia seems to admit that the district court found both actual and constructive fraud since he challenges these findings as erroneous. *See* Appellant's Br. at 26–37. Because we find that the district court correctly found actual fraud, and because a conveyance may be set aside under a finding of either actual *or* constructive fraud, we affirm without addressing Amelia's claims that the district court's finding of constructive fraud is erroneous.

**9.** The issue before the court in *DeVaux* was whether a *secretary* of a law firm had actual or implied authority to establish an attorney-client relationship on behalf of the law firm. *See* 387 Mass. at 818–19, 444 N.E.2d 355.

argues that the jury instruction somehow amounts to an erroneous judgment as a matter of law: "the role of the attorney was defined for [the jury] ... [when] the jury and not the judge is to decide such a matter."

■ Neither of these arguments were preserved for appeal because Amelia did not properly note his objection in the court below. Federal Rule of Civil Procedure 51 states, in relevant part, that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict." Although counsel for Amelia argued during the charge conference that there was no evidence that attorney Driscoll was an agent for the bank—an argument different from the two arguably being made on appeal—this objection was insufficient to preserve the issue because counsel failed to renew the objection after the district court delivered the jury charge. "[I]t is an ironclad rule in this circuit that failure to renew objections *after* the charge constitutes waiver of any claim of error." *Wilson v. Maritime Overseas Corp.*, 150 F.3d 1, 6 (1st Cir.1998). We therefore review for plain error only. *See Play Time, Inc. v. LDDS Metromedia Communications, Inc.*, 123 F.3d 23, 29 (1st Cir.1997). Finding no plain error, we affirm. *See id.* (stating that reversal under plain error standard requires a showing that the alleged error "caused a miscarriage of justice or ... undermined the integrity of the judicial process").

### D

■ Peppered throughout Amelia's briefs are vague and cryptic references to other alleged deficiencies in the lower court proceedings. As we noted during oral argument, these theories are poorly presented and exceedingly confused. It is well-established that

> issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived.... It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.... Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.

*United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) (internal quotation marks and citations omitted). We have done our best to glean from the unusually opaque appellant's briefs those legal arguments that have been even marginally developed. We have considered only those arguments. The rest of Amelia's arguments are waived.

### III.

The decision of the district court is *affirmed.* Costs to appellees.