[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

No. 99-1643

ALLEN D. BRAGDON,

Plaintiff, Appellee,

v.

DEWITT DAVENPORT, PALMER DAVENPORT AND JOHN DAVENPORT,
INDIVIDUALLY AND AS THEY ARE TRUSTEES OF THE DAVENPORT REALTY
TRUST,
Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Boudin, Stahl, and Lynch,
Circuit Judges.

Robert W. Harrington, with whom Robert J. Harrington,
Kimberly E. Atkins, and Law Offices of Robert W. Harrington,
were on brief for appellants.
Janis M. Berry, with whom Conway T. Dodge, Jr. and Rubin and
Rudman LLP, were on brief for appellee.

**Per Curiam**. Defendants-appellants DeWitt Davenport, Palmer Davenport, and John Davenport, individually and as trustees of the Davenport Realty Trust ("DRT" or "the Trust"), appeal a jury verdict in favor of plaintiff-appellee Allen Bragdon on his claims of securities fraud, common law fraud, and breach of fiduciary duty. We affirm.

I.

We set forth the facts as the jury might have found them, consistent with the record but in a light most favorable to the verdict. See, e.g., Grajales-Romero v. American Airlines Inc., 194 F.3d 288, 292 (1st Cir. 1999).

The DRT is a Massachusetts realty trust founded in the 1950s as a family business. The DRT's assets and subsidiary operating companies are now valued at nearly $50 million. There are approximately 5800 to 6000 outstanding shares of the Trust. The Davenports manage the Trust and collectively own a majority of its shares.

In 1984, Bragdon inherited 310 shares of the Trust from his mother. In April 1991, Bragdon contemplated selling his shares, and asked the Davenports about the financial condition

of the Trust. The Davenports gave Bragdon some general financial information, but refused to show him the Trust's financial statements. By way of explanation, Palmer Davenport showed him an amendment to the Declaration of Trust which stated that shareholders are not entitled to receive past or present financial statements.

In February 1994, Bragdon hired independent counsel for assistance in his communications with the Davenports. In May 1994, Bragdon wrote to DeWitt Davenport and requested an estimate of the fair market value of his shares. DeWitt responded, during a meeting at Bragdon's home, that the Trust had experienced financial difficulties during the last four to five years, and that it recently had purchased some of its own shares for approximately $525 apiece. Once again, however, the Davenports resisted providing Bragdon with further financial information about the Trust.

During a subsequent telephone conversation, DeWitt Davenport stated that the Trust would purchase Bragdon's holdings at $600 per share. While Bragdon considered this offer, his attorney advised him that his right to sue the DRT would survive any purchase at this price if the Davenports were misrepresenting the value of the shares. In June 1994, Bragdon and his attorney went to DeWitt's office to discuss the sale.

Davenport again declined to provide any financial information regarding the value of the DRT. Bragdon's attorney stated to DeWitt during that meeting that the Trustees, as fiduciaries, must accurately disclose the fair market value of the shares, and that failing to do so would be a breach of their duty to Bragdon.

On June 9, 1994, DeWitt Davenport spoke with Bragdon over the phone. During this conversation, DeWitt stated that the fair market value of the Trust was $600 per share. On July 27, 1994, Bragdon sold his shares to DRT for $186,000 ($600 per share) despite never having received the specific financial information he requested. In 1996, Bragdon learned that the estimated value for his shares at the time of the sale actually ranged between $1.45 and $2.42 million.

On April 1, 1996, Bragdon brought the present action charging defendants with breach of fiduciary duty; unjust enrichment; violation of the Securities Act of 1934, 15 U.S.C. § 78 et seq. (1997); violation of the Massachusetts Uniform Securities Act ("MUSA"), Mass. Gen. Laws ch. 110A (1999); and intentional misrepresentation. The unjust enrichment claim was tried to the court; all other claims were tried to a jury.

At the conclusion of Bragdon's case, the Davenports moved for judgment as a matter of law, or in the alternative for

a new trial, on all counts.  <u>See</u> Fed. R. Civ. P. 50(a), 59.  The district court granted their motion as to Bragdon's claim under the MUSA, but otherwise denied it.  The Davenports unsuccessfully renewed their motion after presenting their case.

Eventually, the jury returned a verdict for Bragdon in the amount of $1,730,760 on his securities fraud, common law fraud, and breach of fiduciary duty claims.  After the verdict, the Davenports again moved for judgment as a matter of law, or for a new trial.  As to the claim for unjust enrichment, the district court ruled that there was no need for an independent determination because the jury verdict adequately compensated plaintiff.  In all other respects, the court denied the motion. This appeal followed.

II.

On appeal, the Davenports argue that (1) Bragdon's securities fraud claim is time-barred; (2) Bragdon's representation by independent counsel precluded his claim for breach of fiduciary duty; (3) the trial court erred in allowing testimony by plaintiff's experts concerning the value of the DRT; (4) Bragdon presented insufficient evidence of reliance to support a common law fraud claim; (5) Bragdon presented insufficient evidence of a misrepresentation to support a common law fraud claim; (6) the court erred in allowing testimony concerning the Davenports' personal assets and Trust assets of which the Davenports made use; and (7) the evidence of damages was insufficient to support the jury award. At oral argument, however, the Davenports' counsel conceded that an affirmation of the jury's verdict on the breach of fiduciary duty claim would obviate the need to consider unrelated appellate issues. Concluding that such an affirmation is appropriate, we confine our discussion to appellate issues which implicate this verdict.

A. Standard of Review

We start with the standards that govern our review of the preserved appellate issues. We review de novo a district court's grant or denial of a Fed. R. Civ. P. 50(a) motion. See Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 27 (1st

Cir. 1998). In determining the propriety of the district court's action, we view the evidence "in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor". Id. (internal citations omitted). We thus will not reverse a denial of a motion for judgment as a matter of law "unless the facts, seen in the light most favorable to the plaintiff, as well as inferences reasonably drawn therefrom 'lead to but one conclusion - that there is a total failure of evidence to prove the plaintiff's case.'" TransAmerica Premier Ins. Co. v. Ober, 107 F.3d 925, 929 (1st Cir. 1997) (citations omitted). In a similar vein, we will not reverse a denial of a motion for a new trial unless "the verdict is so seriously mistaken, so clearly against the law or the evidence, as to constitute a miscarriage of justice". Id.

As to arguments the Davenports raise for the first time on appeal, we review only for "plain error." See, e.g., Beal Bank, SSB v. Pittorino, 177 F.3d 65, 71 (1st Cir. 1999) (considering challenge to unobjected-to jury instruction in a civil case). In this context, error is plain if it causes a miscarriage of justice or somehow undermines the integrity of the judicial process. See id. (citing Play Time, Inc. v. LDDS Metromedia Communications, Inc., 123 F.3d 23, 29 (1st Cir. 1997)).

B.  Challenge to the Finding of Liability for Breach of Fiduciary Duty

The Davenports assert that the jury's finding of liability for a breach a fiduciary duty was infected by legal error.  Specifically, the Davenports contend that the district court, in instructing the jury, erroneously placed the burden on them to prove that their conduct in purchasing Bragdon's shares "conformed to their fiduciary obligations."  In making this argument, the Davenports acknowledge that the burden is presumptively theirs under Massachusetts law, see Cleary v. Cleary, 692 N.E.2d 955, 958 (Mass. 1998), but make a strained argument for a burden shift on the basis of a statement in Cleary that a fiduciary's burden "is generally met if the fiduciary shows . . . [that the questioned transaction was made] with the advice of independent legal counsel."  Id. at 959.

The Davenports have little reason to complain about the district court's burden-of-proof instruction.  Prior to trial, they submitted to the court a proposed instruction which stated that it was their burden to show that the transaction "was advantageous for the Plaintiff."  Moreover, at trial, they failed to articulate a coherent objection to the instruction given.  Finally, they failed to object to the Fed. R. Civ. P. 49(a) breach of fiduciary duty question that was put to the

jury, which asked whether the Davenports had established by a preponderance of evidence that they had carried out their fiduciary obligations to Bragdon. In view of this triple waiver, we ask only whether the jury's conclusion that there had been a breach of fiduciary duty constitutes a miscarriage of justice or calls into question the integrity of the judicial process. See Beal Bank, SSB, 177 F.3d at 71. Patently, it does neither.

Under Massachusetts law, "the general rule is that one acting in a fiduciary capacity for another has the burden of showing that a transaction with himself was advantageous for the person for whom he was acting." Cleary, 692 N.E.2d at 958. Here, there was overwhelming evidence to support the jury's conclusion that the Davenports' deal with Bragdon was advantageous for them but disadvantageous for Bragdon, and thus constituted a breach of the Davenports' fiduciary duty to Bragdon. Moreover, our review of the record as a whole does not lead us to conclude that, the Davenports' deceptions notwithstanding, Bragdon unjustifiably proceeded with the purchase. Under these circumstances, there is no basis for upsetting the jury's liability determination.

C. Challenge to the Damages Award for Breach of Fiduciary Duty

The Davenports assail the jury's damages award on three grounds.  First, they contend that the district court erred in permitting Bragdon's expert witnesses to testify because these witnesses, in combination, used an improper and prejudicial method to assess the true worth of plaintiff's DRT shares. Second, they assert that the court erred in allowing Bragdon to cross-examine DeWitt Davenport about the value of defendants' personal assets and Trust assets of which the Davenports made use.  Third, they argue that the jury's damages award was insufficiently grounded in the evidence and grossly excessive. Each of these arguments merits only the briefest of responses.

The only challenge the Davenports made to Bragdon's experts below was grounded on the fact that Bragdon's first expert, a real estate appraiser named William Curley, used a valuation methodology that initially valued in toto all holdings in which DRT had an interest, and Bragdon's second expert, an accountant named Stephen Grizey, then reduced this figure to account for the fact that DRT only had a partial interest in some of the holdings.[1]  In the Davenports' view, Curley's testimony regarding the total value of the holdings in which DRT

---

[1]Although we explicitly address only the preserved challenge to the district court's decision to permit Bragdon's experts to testify, we believe it worth stating explicitly that the court's decision was not otherwise plainly erroneous.  See Beal Bank SSB, 177 F.3d at 71.

-10-

had an interest somehow created a possibility that the jury was misled into thinking that DRT was far more valuable than was in fact the case. Our review of the record persuades us, however, that there is no reason for concern about jury confusion; Bragdon's experts clearly and coherently explained their methodology and conclusions as to DRT's value, and the conclusions were amply supported by record evidence. The district court thus acted well within its wide discretion in permitting Bragdon's experts to present the jury with their conclusions. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141-42 (1999) (reviewing for abuse of discretion decision whether to admit challenged expert testimony).

As to the Davenports' second argument, our review of the record persuades us that, due to the overwhelming evidence of a breach of fiduciary duty and the ample evidence supporting the damages award, any error in admitting evidence of the Davenports' personal assets and/or Trust assets of which the Davenports made use was harmless. See Fed. R. Civ. P. 61. And given what we have just said about the evidence supporting the damages award, we summarily reject the Davenports' challenge to the foundation and size of the damages award – a challenge, we add, that was levied only on appeal.

**Affirmed.** **Costs to appellee.**